Carmen John Palmieri V19689
CMC – Echo 8-13L
P.O. Box 8103
San Luis Obispo, CA 93403

FILED

MAR 0 5 2013

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2254_____ 1983 _____

**FILING FEE PAID**
Yes_____   No____

**IFP MOTION FILED**
Yes_____   No____

**COPIES SENT TO**
Court_____   ProSe____

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

CARMEN JOHN PALMIERI, AND, BY AND
FOR THE C. PALMIERI ENTERPRISES,
INC. INVESTORS AND EMPLOYEES,

    Plaintiffs,

  vs.

THE SUPERIOR COURT OF SAN DIEGO
COUNTY; DEPARTMENT OF
CORPORATIONS, COMMISSIONER JAN
LYNN OWEN; JAMES K. OPENSHAW,
FORMER CORPORATIONS COUNSEL, IN
HIS INDIVIDUAL AND OFFICIAL
CAPACITY; DEPARTMENT OF
INSURANCE, COMMISSIONER DAVE
JONES; MINERVA LOPEZ, INSURANCE
INVESTIGATOR, IN HER INDIVIDUAL
AND OFFICIAL CAPACITY; RECEIVER
CHARLES LABELLA, IN HIS INDIVIDUAL
AND OFFICIAL CAPACITY; LA BELLA
AND MCNAMARA, LLP; AND DOES 1-100,

    Defendants.

CASE NO.:
13CV0550 JLS DHB

COMPLAINT FOR DAMAGES;
VIOLATION OF DUE PROCESS OF
LAW, DEPRIVATION AND WILLFUL
TAKING OF PROPERTY, WRONGFUL
RECEIVERSHIP (42 U.S.C. §1983;
ESCROW LAW §17416; INSURANCE
CODE §§10113.2, 10113.3 *et seq*; C.C.P.
564, 566, 567; C.R.C.R. 238, SAN DIEGO
R.C.R. 2.5.4.)

JURISDICTION: FEDERAL AND STATE
VIOLATIONS (PENDENT/
SUPPLEMENTAL JURISDICTION 28
U.S.C.A. §1367)(REF: NO. 135 HEREIN)

DEMAND FOR JURY TRIAL

DEPARTMENT:
TRIAL DATE:
TIME:

TO THE HONORABLE COURT IN THE ABOVE ENTITLED ACTION:

Plaintiff and former President and Chief Executive Officer of C. Palmieri Enterprises,
Inc. ("CPEI"), Carmen John Palmieri ("CJ"), files with this Court a lawsuit for damages based

1

1   upon the facts, exhibits, memorandum of points and authorities, evidence and witness accounts

2   in these moving papers.  Plaintiff C.J. Palmieri hereby alleges:

3        1.     The names and capacities of Defendants, and DOES 1 through 100, inclusive, are

4   known to Plaintiff, who therefore sues said Defendants by such names and capacities.  Plaintiff is

5   informed and believes, and thereon alleges, that each such Defendant is legally responsible in

6   their official and individual capacities, in some manner for the events herein referred to, and

7   proximately thereby caused damage to Plaintiff[s] as herein alleged.

8        2.     At all times herein mentioned, Defendants, and Does 1 through 100, inclusive,

9   were employees and agents of their respective authorities.

10        3.     On April 12, 2011, Plaintiff C.J. Palmieri, received notice from Minerva Lopez,

11   Department of Insurance (D.O.I), Investigation Division, that records seized from Plaintiff's

12   business, home, and storage facilities, on March 28, 2002, were now "ready for release."  Upon

13   notice that these records in evidence were now available, and upon review of the contents of the

14   inventory of these documents provided by Ms. Lopez to Plaintiff on August 8, 2011, Plaintiff has

15   discovered the basis for his claim.  The evidence disclosing that Plaintiff has been deprived of a

16   Constitutional right, Plaintiff is now prepared to go forward with his claim.  (See Exhibit A,

17   Letter and Inventory List from Minerva Lopez, attached hereto)

18        4.     Plaintiff has discovered that the seizure of Plaintiff's property, including, but not

19   limited to, his corporation, businesses, business and personal records, computers, software, the

20   sale of real and personal property, and the dissolution of Plaintiff's company by the Superior

21   Court of San Diego County, Receiver Charles LaBella and LaBella and MacNamara, LLP,

22   Attorney James K. Openshaw and the Department of Corporations, Investigator Minerva Lopez

23   and the Department of Insurance, was in violation of Plaintiff's "Right to Due Process of Law,"

24   when said property was taken from Plaintiff's business, home and storage facilities by

25   Defendants without proper "Notice and a Hearing" under the 5th and 14th Amendments of the

26   United States Constitution, Article 1 § 7 of the California Constitution, and numerous other

27   statutes herein described.

28

5.   That the Superior Court issued the order based upon the complaint filed by the Department of Corporations attorney James K. Openshaw on March 22, 2002 (See Exhibit B, complaint filed by James Openshaw, attached hereto), contrary to and in violation of statutory law and guidelines, without giving "careful" consideration or exercised "caution" to protect all Plaintiffs involved, when it approved such a "drastic remedy" as the appointment of a receiver, when no "great emergency" or "irreparable injury" was to result, when Plaintiff already had his attorney in place administering said viatical program for several months; allowed the takeover of all facets of Plaintiff's corporation when only a small percentage of the corporation was involved in the complaint, (See Exhibit C, Chart depicting CPEI Annual Income, attached hereto); allowed the receiver, with no knowledge of Plaintiff's business type to run roughshod over Plaintiff's company, spending money like water, and allowed its closure, which the order did not purport to put the company out of business, put a company of people out of work without income, insurance, profit sharing, and other benefits; and stifled payment to the viatical investors, which created huge losses for them.  And did not pursue "less severe remedies" which would have been sufficient, "during the few days necessary for a hearing."  Corporations are legal entities, established under law, have rights, to issue stock and exist indefinitely.  (Black's Law Dictionary).

6.   That Andrew Robertson, attorney for the receiver, and Plaintiff had been in constant contact, through numerous telephone conversation, and written communication, at his home, office and on his cell phone, from 2008 to 2010, whereby Mr. Robertson supplied Plaintiff with the accounting from the civil case and other pertinent facts and information from his investigation of the civil case.  Which, proved, Plaintiff did not use any investor funds for his own personal use, that all funds were accounted for, that those funds were "invested" for the benefit of the investors, and that Plaintiff never posed a threat or risk to the investors.

7.   Then, Mr. Robertson wrote letters to this effect for Plaintiff, for the Courts, which were included in Plaintiff's criminal case motions which Mr. Robertson edited and had typed up for Plaintiff, clearly indicating facts in his investigation that were contrary to the original filings and suit brought against Plaintiff by the Department of Corporations.

8.      That the D.O.C. returned all of Plaintiff's assets to him when they found they were not "tainted" with investor funds.  Then Plaintiff relinquished those assets to the receivership for the benefit of the investors.  Then Mr. Openshaw came to Plaintiff seeking his help against the co-defendants in their civil case trial.  Then, because Plaintiff agreed to help the Court and the State, Plaintiff was promised retribution for his criminal case by Mr. Openshaw and the civil court Judge, who never delivered on that promise.

9.      By and for these reasons, and based upon the facts, arguments, and points and authorities contained herein, Plaintiff asks the Court to hear this case, the affect it has had on and damage done to Plaintiffs, hear the witnesses who never had a chance to voice their opinions, concerns, and disagreements, and issue judgment based upon these pleadings.

FACTS OF THE CASE

10.     The civil case against Plaintiff and his related companies began on March 22, 2002, as a complaint was filed with the Department of Corporations (D.O.C.) by a [few] of the investors from Plaintiff's "viatical program," who felt their investments in their "viatical contracts" were threatened for repayment, and felt it necessary to use a state agency to eradicate that situation.  The D.O.C. then filed a suit in civil court against Plaintiff, his related companies and co-defendants, and attained an order to install a receiver in Plaintiff's company.  (See Exhibit B)

11.     On March 28, 2002, with no warning, the D.O.C., Department of Insurance (D.O.I.), and receiver descended upon Plaintiff's home, offices, and storage facilities, stopped [all] business operations, ordered Plaintiff to "not come near his business," held Plaintiff's wife at gunpoint for over six hours in her own home, and on March 27, 2002, froze all personal assets and accounts of Plaintiff.  These "Gestapo" tactics initiated by Defendants also halted all plans put in place by Plaintiff's attorney, James Pokorny, employed as "trustee" for the sale of all viatical assets and distribution of funds that were going to be paid to the viatical investors by Mr. Pokorny. (See Exhibit D, Letter by James Pokorny dated January 6, 2004, to the Court, attached hereto.)  Plaintiff had placed all viatical assets in the hands of Mr. Pokorny.  Mr. Pokorny was taking all phone calls from the investors prior to January 1, 2002.  He was in charge of the sale of

4
COMPLAINT

viatical assets and the distribution of funds. And had discussed how he would pay each of the investors their principle and profit from their investment when he talked to them. He was hired as a trustee for this purpose.

12.     The fact that Plaintiff's attorney was involved with the investors and had a "work-out plan" to help the investors from January, 2002, was conveyed to Mr. Openshaw, when he interviewed the investors and started his investigation. But Plaintiff was never contacted by the D.O.C. or D.O.I. for over three months prior to their attack on Plaintiff. This was completely contrary to Department's policies to contact a licensee when there is a complaint against him.

13.     Plaintiff had an eleven year old, growing national corporation with several entities employing fifty-two people company wide. Plaintiff had a home, family, and was an active member of the community for many years. Plaintiff's corporation was licensed every way possible. With the D.O.C. as a corporation and as a consumer finance lender, a department of Real Estate Broker for eleven years, with the D.O.I. for six years, plus numerous other organizations, including the Chamber of Commerce, Better Business Bureau, and had a Triple A rating with Dunn and Bradstreet for eleven years, and never had a bad mark against it.

14.     Had the D.O.C. and D.O.I. contacted Plaintiff and inquired about the complaint against him, Plaintiff and Mr. Pokorny would have laid out the facts and what Mr. Pokorny was doing, and the state would have seen how Mr. Pokorny had the situation under control and that he was very competent to do the job. This would have brought about an amicable resolution for all involved. In fact, when Plaintiff discovered his accounts were frozen on March 27, 2002, he went to Mr. Pokorny's office and Mr. Pokorny called Mr. Openshaw numerous times, but Mr. Openshaw didn't even have the courtesy to call Mr. Pokorny back.

15.     Mr. Pokorny was employed by Plaintiff as a trustee so all viatical operations were out of Plaintiff's hands. Mr. Pokorny had his work-out plan together, he had all the investor calls directed to his office, he had control of the viatical assets to be sold and the proceeds to be paid directly to the investors. One hundred percent (100%) of their investment, plus the profit promised them. That's what they expected, and were only a few months away from realizing that dream.

16. Instead, Mr. Openshaw's need to get this case to court, with his over zealous tactics, did not disclose anything about Mr. Pokorny's involvement to the Court. The Court approved the D.O.C.'s requests for the appointment of a receiver, and the blizzard of paperwork and destruction began. All viatical asset sales were halted, even the commercial real estate that was in escrow where Plaintiff invested the investors' funds sent to him by Robert Shearburn in Arizona. The receiver, Charles LaBella, basically shut Plaintiff's company down the day he took over on March 28, 2002. He immediately changed all the locks on the company doors, told Plaintiff's attorney, "Palmieri is not to come back," stopped all advertising, paid no bills, salaries, insurance or profit sharing, and started selling everything as fast as he could.

17. All this basically alienated Plaintiff who could have greatly helped mitigate the situation. Because of this, Plaintiff was ordered by his attorneys to not speak to the receiver or the state. So the receiver played his games and ran roughshod over Plaintiff's company, causing its closure within three months, and sold assets at fire sale prices.

18. Plaintiff was arrested in October of 2002. After six months in County Jail, the investors still had not been paid a dime. Plaintiff knew something had to be done. So Plaintiff wrote two letters to the investors letting them know what was going on with the receivership and the state. Plaintiff was trying to put a plan together to help the investors. All Plaintiff ever wanted was for the investors to get their money plus the profit promised them. In response to Plaintiff's letters, many investors wrote to Plaintiff, the judge in the criminal case, and the D.A., telling them to give Plaintiff a chance because they wanted their money back.

19. In November of 2003, Plaintiff called Andrew Robertson, the receiver's attorney for a meeting with the receiver. Plaintiff wanted to know how he could help the investors because they were not getting paid, even though Plaintiff knew they had sold assets. That's when Plaintiff found out that the receiver only made about three million dollars from those sales. Plaintiff was furious. Plaintiff told Mr. Robertson that they didn't even get the down payment back that Plaintiff put into the commercial real estate and that there was over ten million dollars in equity when the receiver took over, and now we had a skyrocketing real estate and mortgage market ensuing.

20.     When Plaintiff asked Mr. Robertson why they only netted the receivership a few millions dollars, when Plaintiff and his management team had all the commercial real estate poised to double, all Mr. Robertson could say was, "We're not real estate people." All of Plaintiff's companies were real estate related.  Why did the court appoint someone who knew nothing about real estate?  This cost the receivership millions of dollars.  And tragically, the receiver did not even show up in an Arizona court to post a bond for a one million dollar real estate investment that Plaintiff had made, which cost the receivership even more money.

21.     Then, after all Mr. Openshaw did to Plaintiff, he realized Plaintiff's forthrightness and turned Plaintiff's assets back over to him.  Mr. Openshaw found that none of Plaintiff's real or personal property has been "tainted" with viatical money.  Then Plaintiff relinquished to the receivership over two and a half million dollars of property, willing, for the benefit of the investors.

22.     After Plaintiff asked Mr. Robertson to see the receiver, Plaintiff met with Mr. LaBella in County Jail in November 2003.  Mr. La Bella told Plaintiff, "We know you lived a modest life-style.  We just want to know where everything is."  Plaintiff had been told by his civil and criminal attorneys to not speak to the D.O.C. or the receiver for some legal reasons.  But, after Plaintiff had dropped those attorneys, he knew he had to work with the receiver in order to help the investors.  Because to this point, the investors had not seen any money from the receivership.  Everyone kept saying that Plaintiff cost the receivership unnecessarily because he did not want to help the state in their investigation.  But Mr. LaBella did not want Plaintiff's help.  And that, coupled with Plaintiff's attorneys telling him not to speak to the D.O.C. or receiver, tied Plaintiffs' hands.  That is why Plaintiff wrote two letters to the investors in the summer of 2003 when he was in County Jail.  It was taking way too long to pay the investors, and all the receiver was doing was lining his pockets and wasting the investors' money.  So after the meeting with Mr. Robertson and Mr. La Bella, they finally made a distribution to the investors.

23.     After Plaintiff was sentenced on January 13, 2004, Mr. Openshaw asked Plaintiff for his help in the civil case against the co-defendants, Robert Shearburn and his son. (See

COMPLAINT

1  Exhibit E, letter from Mr. Openshaw on March 12, 2004, attached hereto.)  This Plaintiff did
2  willingly and gave his consent to two days of depositions on April 14 and 15, 2004. (See Exhibit
3  F, Notice of Deposition of Carmen J. Palmieri, attached hereto.)  Then Plaintiff went back to the
4  civil court on April 29, 2004 and met with Judge Prager, the judge in the civil case and was
5  asked by Judge Prager to be a state's witness for the D.O.C. in the civil trial against the co-
6  defendants in order to expose the corrupt dealings of Robert Shearburn, and do whatever he
7  could to help the investors.  (See Exhibit G, Order to Produce, from Judge Prager, attached
8  hereto.)  This Plaintiff also did willingly.

9     24.     During Robert Shearburn's civil trial, many things unbeknownst to Plaintiff, came
10 out about Mr. Shearburn, and a number of things were confirmed that were told to Plaintiff about
11 Mr. Shearburn.  How Mr. Shearburn manipulated the investors, and Plaintiff for his own agenda.
12 How he had lost his Financial Planner's license, how the State of Arizona was after him, how he
13 had been involved in a National pay phone scam where his investors had lost all their money,
14 and that was why he brought them into Plaintiff's viatical program and was trying to recover
15 their money back that way.  How he was able to get some investors to mortgage their homes and
16 bring even more money in.  And how his sales pitches had extracted every dime the investors
17 had.  This was the person the D.A. was going to use as a witness against Plaintiff in a trial.

18    25.     At the end of Mr. Shearburn's trial, Judge Prager levied huge judgments against
19 Mr. Shearburn and his son. (See Exhibit H, Letter from James Openshaw, dated August 11,
20 2004, attached hereto.)  This letter also expresses Mr. Openshaw's thanks to Plaintiff for his help
21 and to discuss further business.  Even Judge Prager thanked Plaintiff for his cooperation, and
22 stated in conference, that he would testify for Plaintiff if he were called upon.

23    26.     Mr. Shearburn's actions, sales tactics and agenda were all about the money.  He
24 was obsessed with bringing in money and investors any way he could.  The more Plaintiff told
25 Mr. Shearburn he didn't have viatical policies, the more Mr. Shearburn advertised and the more
26 investors he committed to the program. He kept telling Plaintiff, "Do whatever you have to do,
27 just keep this program going. I want this to keep going for three to five years.  I'm depending on
28 you and the investors are depending on you."  That meant keep investing the money.  He was the

investor's representative.  Plaintiff felt an obligation, through Mr. Shearburn, to honor the commitments made to the investors, to get them the profit promised them.  So Plaintiff invested the funds, and then he turned the viatical program over to Mr. Pokorny, to administer the program for the investors, just prior to January 2002.  Plaintiff got such good financing on the commercial real estate that it could not be sold, refinanced, exchanged, or anything until January 2002.  That is when Mr. Pokorny took control of the properties and had the investors contact him.  All these facts, and more, came out in Mr. Shearburn's trial in 2004.

27.  After Mr. Shearburn's trial, during Plaintiff's appeal, investors started contacting Plaintiff wanting to know where all their money went.  Because even into 2006 the receivership still had not closed.  So in 2007 Plaintiff wrote to Mr. Robertson seeking answers.  Plaintiff requested all the accounting for the receivership, including how much the receiver billed the receivership for his services.  One thing Plaintiff knew, was that the accounting would prove, for his criminal case, that he never intended to defraud, steal, or cheat the investors out of their money, as he was accused of by the D.O.C., D.O.I. and D.A.

28.  After eight months, when Mr. Robertson did not respond to Plaintiff's letters, Plaintiff filed an action in the civil court to press the receiver for the accounting.  Finally Mr. Robertson responded to Plaintiff by calling Plaintiff's wife in August of 2008.  This opened the line of communication between Plaintiff and Mr. Robertson.  Mr. Robertson wanted to know exactly what Plaintiff wanted.  Plaintiff told Mr. Robertson, on behalf of Plaintiff and certain C.P.E.I. investors, he wanted an accounting of the receivership.  That's when Plaintiff found out the receivership had only been closed in March of 2007.  Were they billing the receivership for five years?  Finally, after several months, Plaintiff received the accounting.  This did not seem to be conclusive to Plaintiff and the investors.  But it did prove that Plaintiff "invested" the investors' money and did not use it for his own personal use.  Mr. Robertson knew from his investigation over five years, that Plaintiff was not out to cheat the investors out of their money.  He also saw how Robert Shearburn manipulated everyone to get what he wanted.

29.  Plaintiff and Mr. Robertson were in constant contact and had many conversations from 2008 to 2010.  Mr. Robertson gave Plaintiff his office, home and cell phone numbers.

COMPLAINT

1   (Records of prison conversations on recorded lines.)  Mr. Robertson stated in conversations with

2   Plaintiff how everyone thought how "excessive and harsh" a sentence Plaintiff received.

3   Especially, when now, the investigation, the accounting, and Mr. Shaearburn's trial revealed

4   something so much different.

5        30.    Plaintiff told Mr. Robertson, "I told you guys this in the beginning." Mr.

6   Robertson said, "I know, I know." He said, "We were surprised when your appellate attorney

7   never contacted us. We know you didn't do what you were convicted of." The accounting

8   showed, that Plaintiff did not use the investors' money for his own personal use; that all funds

9   were accounted for; that the money was not hidden, spent, or squandered; that Plaintiff did not

10  live a "lavish life-style;" that the money "appeared to be invested for the investors;" and that

11  Plaintiff didn't make any money from the investors.

12       31.    Plaintiff asked Mr. Robertson if he would write letters to the criminal court as to

13  the results of his investigation in the civil case, in order to help Plaintiff in his criminal case. Mr.

14  Robertson obliged Plaintiff and wrote letters and gave evidence for the court, and told Plaintiff

15  he would even testify on Plaintiff's behalf in court for Plaintiff. (See Exhibit I, letter from Mr.

16  Robertson, attached hereto).

17       32.    Plaintiff was putting a writ together and gathering all this newly discovered

18  evidence for his criminal case, but did not have anyone to type his motions or represent him. Mr.

19  Robertson told Plaintiff he would look for someone to type his motion and would look around

20  for an attorney to help him in court. Mr. Robertson found a paralegal to type Plaintiff's writ, and

21  he edited it before it was finalized. Much of the facts for this statement of facts came out of that

22  writ. When Plaintiff asked Mr. Robertson why he was helping Plaintiff, he said "maybe my

23  Catholic guilt is getting to me."

24       33.    There are many people who will testify as to the validity of what Plaintiff has

25  written. Including, C.P.E.I.'s accounting firms, C.P.E.I.'s corporate attorneys, C.P.E.I's

26  marketing firm, title and escrow company personnel, banking representatives, business

27  associates, and C.P.E.I.'s 52 employees and numerous investors. Sierra Funding Group was one

28  of the state's "premier" mortgage companies. Plaintiff had been nominated "Business man of

the Year" for California, for 2000 by the Republican National Committee for his business achievements. Plaintiff and his company were well known and liked. Plaintiff was using all his resources to help those investors. There was no reason for the state to destroy Plaintiff or his company the way it did. The corporation, being a legal entity, could have survived perfectly well without Plaintiff. It was Defendants who callously and without careful consideration to all involved, caused the havoc upon the investors, Plaintiff and his family, and the C.P.E.I employees. And if Defendants were truly "servants of the people" millions of dollars of Plaintiff's money, investor funds as well as taxpayer dollars, could have been spared.

## CAUSE OF ACTION ONE

## VIOLATION OF RIGHT TO DUE PROCESS

34.     Plaintiff's claim is against all Defendants for the violation of rights of Plaintiff by the actions of Defendants. Defendants willfully and determinately conspired to deprive Plaintiff of significant property interests without prior notice or a hearing where no threat or emergency existed, violating Plaintiff's right to Due Process of Law under the United States and California Constitutions and statutes of both the Department of Corporations and Department of Insurance. And where the ex parte order appointing a receiver contravenes state and federal due process.

35.     Under 42 U.S.C. Section 1983, Plaintiff has the right to bring action against those for violation of his rights:

> "Every person who, under any color of any state, ordinance, regulation, custom, or usage of any status or territory or the District of Columbia, subjects, or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit or equity, or other proper proceeding of redress."

36.     Plaintiff's claim also nullifies any claim by Defendants for "Qualified Immunity," under Section 1983 because: "(1) Plaintiff's allegation are true and establish a constitutional violation; (2) the right was clearly established; and (3) that a reasonable official would have known that his or her actions violated the constitutional rights at issue."

11

COMPLAINT

37.     U.S.C.A. Constitutional Amendment 5 and <u>Mathews v. Eldridge</u>, U.S. Va. 1976, 96 S.Ct. 893, 424 U.S. 319, 47 L.Ed. 29, 18, states:

> "Requirement that parties be notified of proceedings affecting their legally protected rights is vital corollary to one of most fundamental requisites to due process, the right to be heard." "Essence of due process is requirement that person in jeopardy of serious loss be given notice of case against him and opportunity to meet it; all that is necessary is that procedure be tailored, in light of decision to be made, to capacities and circumstances of those who are to be heard, to insure that they are given meaningful opportunity to present their case."

38.     And under U.S.C.A. Constitutional Amendment 14 it states:

> "There is an essential dichotomy between governmental action, which is subject to scrutiny under the Fourteenth Amendment, and private conduct, which, however, discriminating or wrongful, is not subject to the Fourteenth Amendment prohibitions."

39.     Plaintiff had a well established company with a disciplinary-free record with all licenses for over eleven years.  Because of such longevity, as a matter or course, agencies will send a target letter to their licensees notifying them that they are the target of their investigation. But the state just came down on Plaintiff without prior notice, the receiver threw Plaintiff out of his company, and the Department of Insurance led by Ms. Lopez, raided Plaintiff's home and storage facilities and took his property.  No notice or hearing prior.

40.     Under the State and Federal Constitutions, when a significant property interest is at stake, due process forbids any exercise of substantially affecting a defendant's rights without notice. (<u>Griffin v. Griffin</u>, U.S. Dist. Col. 1946, 66 S.Ct. 566, 327 U.S. 220, 90 L.Ed. 635.)

///

///

41.     Under established laws, Plaintiff should have, at the least, been given the right to respond to the complaint by the investors before the rush to judgment action by Defendants, which ended up costing Plaintiffs millions of dollars.

42.     Plaintiff turned the whole viatical program over to his attorney, James Pokorny (See Exhibit D), prior to January 2002.  Plaintiff employed Mr. Pokorny as a trustee to

12

COMPLAINT

1  administer the viatical program.  With Plaintiff's attorney in place as a trustee administering his

2  "workout plan," which the investors were in constant contact with, there was no "great

3  emergency" by the state for their drastic actions.  No "irreparable injury" would have resulted.

4  Any irreparable injury was caused solely by the state for putting their interests first.  Not only do

5  the state and federal constitutions protect due process rights, but state agency statutes provide for

6  due process also.

7       43.    Under the Department of Corporation's own statutes and "Escrow Law" Section

8  17416; Order to cease unlicensed business; hearing; recession, (which the D.O.C. said Plaintiff

9  violated), it states:

11      "Whenever in the opinion of the commissioner any person, except as named
in Section 17006, is engaged either actually or through subterfuge, in the
12      business of receiving escrows for deposit or delivery as defined in this
division, without a license from the commissioner, the commissioner may
13      order that person to desist, and refrain from engaging in that business.  If
within 30 days after such an order is served, a request for a hearing is filed in
14      writing and the hearing is not held within 60 days thereafter, the order is
15      rescinded."

16       44.    In other Corporations Codes and Financial Codes for escrows it states:

18      "The commissioner has the authority to issue a cease and desist order after
notice and hearing." (Citations)

19  And:

21      "Charges; notice and hearing; No person having in his or her possession any
of these funds or documents shall be liable unless he or she has received
22      written notice of the order."

24       45.    Under the Department of Insurance, Insurance Codes for "Viatical and Life

25  Settlements," which Plaintiff was licensed under for six years; Code Section 10113.2 (b)(2) it

26  states:

27      "Whenever it appears to the commissioner that it is contrary to the interests
of the public for a person licensed to this section to continue to transact life
28      settlement business, he or she shall issue a notice to the licensee stating the

reasons therefor.  If after a hearing, the commissioner concludes that it is contrary to the interests of the public for the licensee to transact life settlement business, he or she may revoke the person's license, or issue an order suspending the license for a period as determined by the commissioner."

Section (K)(1) states:

"The commissioner may, whenever he or she deems it necessary to protect the interests of the public, examine the business and affairs of any licensee or applicant for a license.  The commissioner shall have the authority to order any records, books, files, or other information, as is reasonable, necessary to ascertain whether or not the licensee or applicant is acting or has acted in violation of the law or otherwise contrary to the interests of the public."

Section (m) states:

"The commissioner may investigate the conduct of any licensee, its officers, employees, or any other person involved in the business of the licensee, or any applicant for a license, whenever the commissioner has reason to believe that the licensee or applicant for a license may have acted or may be acting, in violation of the law, or otherwise contrary to the interests of the public. The commissioner may initiate an investigation on his or her own, or upon a complaint filed by any other person."

Section (n) states:

"The commissioner may issue orders to licensees whenever he or she determines that it is reasonably necessary to ensure or obtain compliance with this section, or section 10113.3.  The authority includes, but is not limited to cease and desist in any practice that is in violation of this section, or section 10113.3 or otherwise contrary to the interests of the public."

46.    Plaintiff was not only under the Department of Corporations for eleven years, but licensed as a Viatical Settlement Company for six years. Plaintiff never heard a peep from either Department or had any such hearing, received any cease and desist orders, or any prior investigation.

47.    Section 10113.2(o) of the Department of Insurance statute also states:

"The commissioner may, after notice and a hearing at which it is determined that a licensee has violated this section or section 10113.3 or any order issued

14

COMPLAINT

pursuant to this section, order the licensee to pay a monetary penalty of up to ten thousand ($10,000) which may be recovered in a civil action."

48.     There were never any prior "orders." There was never any "notice or a hearing." There was never a "cease and desist" order. No "written notice." No "examination of book or records." The commissioner's statutes state he/she "shall issue a notice" as to "contrary business," and no person "shall be liable" unless they have received "written notice of the order." NO notice was issued.

49.     Plaintiff contends Defendants violated due process rights, when no great emergency existed and did not give Plaintiff prior notice of the complaint against him. It always returns to "Notice and a Hearing" to protect a person's rights. Defendants did not follow the guidelines that Plaintiff was licensed under. Procedural guidelines for all licensees. Nor state and federal laws protecting an individual's rights to be heard, prior to "governmental action" against him.

## CAUSE OF ACTION TWO

### INSUFFICIENT APPLICATION-THE COMPLAINT

50.     Plaintiff's claim is against all Defendants, whereby, the complaint filed with the court on March 22, 2002, was inaccurate, inconclusive, violated statutory law, highly prejudicial to Plaintiff, and insufficient to perpetuate the actions by Defendants on Plaintiff, his home, and his business on March 28, 2002.

51.     The complaint asked for a temporary restraining order, preliminary injunction, permanent injunction, and receivership, all at that single ex parte hearing on March 22, 2002, without Plaintiff's presence. Then on March 28, 2002, the receiver and his entourage took Plaintiff's company over, changed all the locks, locked Plaintiff out and told his attorney to not let Plaintiff come back, cut off Plaintiff's income and insurance, stopped all advertising and paying of bills, and began putting all of Plaintiff's business, real and personal property assets, and the commercial property up for sale --- and within three months closed Plaintiff's company.

52.     At the same time, the Department of Insurance, raided Plaintiff's home and held Plaintiff's wife at gun point for over six hours, raided his storage facilities and changed all their locks, and confiscated all business and personal records.

15

53.    The worst was, that Mr. Openshaw and Mr. LaBella, the court appointed receiver, along with the order, stopped the sale of all the commercial real estate that James Pokorny was in control of and working on to pay off the investors, basically taking their full invested dollars and their profit right out of their hands.

54.    Even more damaging, was that Mr. LaBella started the sale process of the commercial real estate all over again, socked all funds away in the receivership where he collected millions of dollars in fees, and took two years to make the first distribution of monies to the investors. Meanwhile the investors were writing letters to Plaintiff asking, begging him, to get their money released, thinking Plaintiff had it at his disposal. When in all actuality the receiver had control of everything. Did they not know what bringing in the state was going to do to their investments? That is why Plaintiff wrote two letters to the investors in the summer of 2003. Someone had to tell them what the receiver was doing and the scope of the complaint.

55.    There was nothing temporary about Mr. LaBella's appointment. A temporary restraining order is a court order "preserving the *status quo*" until litigant's application for a preliminary injunction or permanent injunction can be heard. The preliminary injunction is to be granted only after defendant received notice and an opportunity to be heard. And the permanent injunction is to be granted after a final hearing on the merits.

56.    Under the Code of Civil Procedures Section 566 it states:

(a) "A temporary restraining order could give adequate protection during the time necessary to inspect corporations books, where a court of equity has inherent power to appoint a "temporary receiver" for a solvent, going corporation."

(b) "The power of a court of equity to appoint a temporary receiver for a solvent corporation will not be exercised in a doubtful case, and the remedy being a drastic one, only in case of urgent necessity, where there is no other adequate remedy."

57.    There was no allegation in the complaint that there was an "urgent necessity" of any dangers that books would be removed or mutilated or assets sold or transferred, or that there was a likelihood that the equipment and furnishings would be removed, lost or injured, or

1  improper entries in books of accounts be made, or commingling of funds, thereby excluding

2  Defendants from knowledge of the accounts.  Plaintiff was not out to cheat the investors.  Had

3  Defendants come to Plaintiff in an amicable fashion, Plaintiff and his attorney would have

4  showed Defendants everything.

5      58.     To get an injunction the complaint must show that there is no plain, adequate, and

6  complete remedy at law, and that an irreparable injury will result unless the relief is granted.

7  And, that a great emergency exists.

8      59.     There was a plain, adequate, and complete remedy that would have benefited all

9  the parties, and Plaintiff had it in place; it was his attorney, a trustee, handling everything,

10  adequately, out of reach of Plaintiff.  This was told to Mr. Openshaw by the investors, it was not

11  in the application to the court, nor told to the court at Mr. Openshaw's hearing on March 22,

12  2002.

13      60.     Having an adequate remedy in place, which the investors were working with,

14  shows no great emergency or irreparable injury would result.  The "irreparable injury rule"

15  states:

16      "The principle that equitable relief (such as an injunction) is available only
17      when no adequate legal remedy (such as monetary damages) exists."

18      Black's Law Dictionary.

19      61.     There was a process in place to adequately satisfy the viatical investors, which

20  was being administered for at least five months prior to the state coming down on Plaintiff.  This

21  would have been adequate, legal remedy for all investors.  An irreparable injury is such that:

22      "An injury that cannot be adequately measured or compensated by money
23      and is therefore, often considered remediable by injunction." Black's Law
       Dictionary.

24

25      62.     No irreparable injury existed.  This case was about getting the investors paid.

26  Should all of the legal infractions Mr. Openshaw stated in his complaint have over-shadowed

27  this fact?  Plaintiff says no.  Any legal infractions Plaintiff may have committed, should have

28  been handled differently.

63.     The complaint never stated a "great emergency" existed for the court to grant such an "extreme," "costly," and "drastic" remedy as a receivership, when no other remedy was sought, such as getting Plaintiff's side of the argument, before causing such financial damage. "Such an appointment under the established law of this state cannot be legally made except upon a showing of great emergency." Ryan v. Murphy, *supra*, at page 641 of 39 Cal.App., 179 pp. 517, 518.

64.     The "established law" is California Rules of Courts, Rule 238, which states: "The stringent procedural requirements must be met under rule 238 before an ex parte appointment of a receiver can be approved."

65.     Where was the great emergency Mr. Openshaw?  Where was irreparable injury to result when a trustee had been in place and was actively administering the viatical assets for sale and distribution of funds?  These facts hold that no great emergency existed or irreparable injury would have resulted.  Mr. Robertson's investigation of the civil case proved Plaintiff was not a threat to the investors' money.  And, the letter from Mr. Pokorny to the criminal court Judge proved he was in control of the viatical assets, not Plaintiff.

66.     Lastly, the complaint stated Plaintiff attempted to "defraud" investors.  Under the Code of Civil Procedures Section 564, in Hedden v. Waldeck (1937) 9 Cal. 2d 631, 636, 72 P.2d 114, Plaintiff alleges violation of statue, which states:

> (a) "A fraud must be proved by clear and convincing evidence because there is a presumption of fair dealing against fraud."

And:

> (b) Fraud is never presumed, but must be established by proof; presumption being in favor of fair dealing."

67.     And in Golden State Glass Corp v. Superior Court of Los Angeles County, 13 Cal. 2d 384, 393, 90 P.2d 75, 79, a precedent setting case for similar complaints and receiverships, it states:

18

COMPLAINT

"It is true that the complaint contains averments <u>alleging fraud</u> and mismanagement on the part of Shenberg and Goldman, but these are stated either as <u>conclusions or upon information and belief.  Stronger proof is essential to justify a receivership</u>, where specific and detailed evidence that a corporation's business is being successfully conducted at a profit is presented in opposition thereof.  A complaint based largely upon <u>generalities and conclusions</u> of Plaintiffs and upon <u>information and beliefs is insufficient</u> upon which to appoint a receiver."

68.     According to Black's Law Dictionary, the word "defraud" is defined as:  "To cause injury or loss to (a person) by deceit."

69.     The completed investigation and accounting proved that Plaintiff was not out to cause "injury or loss" to the viatical investors.  Specific and detailed evidence about a corporation's business is paramount to establish fraud.  Stronger proof, other than information and belief, <u>must be presented</u> so the Court can assess a corporation's "health," in opposition to such a drastic measure as a receivership to a defendant corporation.  Plaintiff never had a chance to oppose before the damage had been done.  And the end result was catastrophic to Plaintiff's business, its employees, and the investors.

70.     Plaintiff alleged the complaint and allegations, being made up largely of conclusions information and beliefs, and did not contain "exhibits, evidence, or supporting affidavits," was insufficient to show there was such a great emergency to completely shut Plaintiff's company down, take property out of Plaintiff's hands, put everyone out of work, and stifle payment to the investors.

71.     Under its own statues, the court exceeded its powers, when <u>less severe</u> remedies were available in opposition to a receivership. Courts rely too heavily on receiverships as a remedy for plaintiffs when serious and permanent injury to name and good will are at stake.  By numerous authorities from the stand point of the business welfare of a defendant corporation, the ex parte order is so dangerous.  The Gastapo tactics employed by the Defendants was far too severe, <u>when it was known</u> the investors' money was already in the hands of an officer of the court.

## CAUSE OF ACTION THREE

# WRONGFUL RECEIVERSHIP

72.     Plaintiff's claim is against all Defendants, whereby, the appointment of the receiver for C. Palmieri Enterprises, Inc. violated statutory law, when there was no showing of "urgent necessity" or "emergency" warranting the drastic remedy of the ex parte appointment; the appointment of the ex parte receiver without notice or hearing, contravenes federal and state due process; the actions by the state against C.P.E.I. was set out for its dissolution, against said order; and that the receivership was an unnecessary "legal luxury" of which the extravagant cost did not benefit anyone.

73.     Under the San Diego Rules of Court, Rule 2.5.4. it states:

> "*Ex parte* appointment of a receiver is a drastic remedy used only with caution in cases of great emergency when it is shown that the party seeking appointment of a receiver will suffer irreparable harm before a noticed hearing can be held and that no less drastic remedy, such as a temporary restraining order, will prevent the threatened harm.  Appointment of a receiver *ex parte* is contingent upon the filing of an applicant's bond (C.C.P. Section 566) and a receiver's bond (C.C.P. Section 567).  The receiver's bond will be fixed in an amount sufficient to cover the value of transferable personal property and cash which the receiver may possess at any time during the expected period of the receivership."

74.     As stated in the Second Cause of Action, the complaint asked for a temporary restraining order.  This was a "less drastic remedy" than immediately installing a receiver before the court could have heard from Plaintiff.  The fact, that Plaintiff's attorney had control of the viatical affairs, posed no great emergency when everything was out of Plaintiff's hands.  The court violated its own rules when Mr. Openshaw's complaint did not show irreparable harm would come to the investors.  And it did not oversee the procedures of the temporary order.  Mr Openshaw's complaint was made up of information and belief, conclusions, and allegations, and was insufficient to empower the court to make the ex parte order.

75.     The appointment of the *ex parte* receiver without notice of a hearing contravenes federal and state due process.  The *ex parte* order was not a "temporary" provision, only effective until an order to show cause could have been heard upon notice to the, then defendant, then to

1    initiate the preliminary injunction.  Consequently, the appointment was confirmed in that initial

2    hearing on March 22, 2002, but not initiated until March 28, 2002, six days later (C.C.P. Section

3    566).

4    76.    Plaintiff contends there was enough time from March 22, 2002 to March 28, 2002

5    for Defendants to have provided notice for a hearing to defendant, to "show cause" as to why an

6    order should not have been made confirming the ex parte appointment of the receiver.  The

7    appointment violated due process when defendant never got a chance in those six days to show

8    cause before the state came in and took over Plaintiff's company and the order to show cause

9    was heard upon notice to defendants. (C.C.P. Section 566)

10   77.    So there was no temporary order in effect, which should have ceased on the day

11   of the hearing, because the appointment was confirmed for permanency prior to a hearing and a

12   showing, which must be conceded to, to have been adequate to justify the receivership.(C.C.P.

13   Section 566)

14   78.    The receiver in instant case was never temporary until Plaintiff could show cause

15   in opposition to the receivership.  This receiver was there to stay.  He changed all the locks, as

16   did the Department of Insurance, and threw Plaintiff out, then shut the company down.  The

17   permanency of the receiver and the way he handled Plaintiff's company, shows Defendants

18   sought the dissolution of C.P.E.I., which was not in the order approved by the Court, but one for

19   accounting, hence the hiring of a forensic accountant.

20   79.    Under the Code of Civil Procedure Section 564 it states:

21   (a) "A receivership is a drastic remedy and may involve unnecessary
22   expense."

23   And:
     (b) "Ordinarily, if there is any other remedy, less severe in it results, which
24   will adequately protect the rights of the parties, a court should not take
     property out of the hands of its owners."
25

26   80.    The court had the "less severe" remedy at hand in the order, the temporary

27   restraining order, which was issued on March 22, 2002.  All the Court had to do was monitor

28   the process.  This would have been adequate protection "until the few days necessary for a

21

hearing." But instead, the receiver took over Plaintiff's company with an entourage of fifty, and Ms. Lopez with the D.O.I. took over Plaintiff's home with about as many, and held Plaintiff's wife at gun point for several hours. All the orders for permanency were in full swing from the day Defendants stormed into Plaintiff's life. There was nothing "temporary" about the order, which was to "preserve the *status quo*" until the hearing.

81.     Under the Code of Civil Procedures Section 566 it states:

> "Statute providing that, if a receiver is appointed upon ex parte application, the court before making order must require from applicant an undertaking (bond), held mandatory."

Under C.C.P. Section 567 it states:

> "The receiver's bond will be fixed in an amount sufficient to cover the value of transferrable personal property and cash which the receiver may possess at any time during the expected period of the receivership."

82.     The C.P.E.I. receivership was kept open by the receiver, Charles LaBella, for five years. The statute states the receiver's bond is to be sufficient to cover the size of a receivership. A violation of this section for undertaking makes the receivership "void" (C.C.P. Section 566)

83.     Under the Code of Civil Procedure Plaintiff holds all Defendants liable who acted in concert together:

> "If applicant procured appointment of receiver wrongfully, maliciously, or without probable cause, he would be responsible under the statute." "Costs of receivership and any compensation for receiver could properly be charged the Plaintiff who wrongfully obtained an unnecessary receivership."

84.     Plaintiff alleges that the appointment of the receiver was a drastic remedy to be employed only in exceptional circumstances and that the trial court failed to consider remedies short of the receivership.

85.     And the Court abused its discretion by appointing a receiver and denied Plaintiff of a fair hearing prior to the appointment.

///

///

COMPLAINT

## CAUSE OF ACTION FOUR

### THE COMPLETED INVESTIGATION

86.     Plaintiff's claim is against all Defendants, whereby the completed investigation for Civil Case NO. GIC785226, by the receiver's attorney, Andrew Robertson, and the completion of the forensic accounting proved contrary to the Department of Corporation complaint. Mr. Robertson's investigation and numerous conversations, letters and Receiver's Final Account and Report, filed March 7, 2007, which Plaintiff only recently received, proved that Plaintiff never stole or pocketed any of the investors' money.

87.     Mr. Robertson's report contradicted all the misconceptions and erroneous information of Mr. Openshaw's complaint, which drew in the Department of Insurance and the District Attorney and criminal court. The report states that "we have no current evidence that Mr. Palmieri has secreted any substantial funds or has any hidden assets."

88.     This is significant because Plaintiff had everything out in the open and in Mr. Pokorny's hands, and told everyone the money was invested for the investors. That was why Mr. Pokorny was involved. And the report stated Plaintiff relinquished over two and a half millions dollars in personal real estate to the receivership. This was in 2003 after Mr. Openshaw found out that none of the Plaintiff's real or personal property was "tainted with viatical money."

89.     The completion of the forensic accounting proved all funds were accounted for and invested by Plaintiff for the benefit of the investors. In the end, the accounting was labeled satisfied by the Department of Corporations, the receiver, and Judge Prager the judge for the civil case. The accounting further established that Mr. Robertson and the receiver concurred with the forensic accountant's findings, that all funds were accounted for, not hidden, spent or squandered by Plaintiff; that the funds "appeared to be invested for the benefit of the investors; that Plaintiff did not use the investors' money for his own personal use; that Plaintiff did not live a "lavish lifestyle;" and significantly, that Plaintiff did not make a dime from the investors.

90.     After Mr. Robertson's investigation, and during 2008 and 2010, when Plaintiff and Mr. Robertson were in heavy communication over his investigation, the accounting, and the Shearburn trial, Mr. Robertson revealed much about his, Mr. Openshaw's and Judge Prager's

COMPLAINT

1   thoughts.    Mr. Robertson was helping Plaintiff so much, that his own bosses told him to "back

2   off." Plaintiff has this information from third party sources.  Why would he go out of his way to

3   help Plaintiff?  Surely, it wasn't just because of his "catholic guilt," as he once described it.  It

4   was because he knew this case was different from the beginning.  So much of this was

5   unnecessary just because of a few securities violations.  Not even the S.E.C. operates like this.

6         91.      There are major discrepancies in this case.  Mr. Robertson's conversation,

7   comments, findings and writings contradict how Mr. Openshaw handled this case from the

8   beginning.  Even after Mr. Shearburn's trial and all that came out about him, it was apparent that

9   Mr. Openshaw saw Plaintiff's benevolent interest in the investors, his cooperation to help them,

10   and the fact that "this case wasn't like other cases I've had," as Mr. Openshaw stated in a

11   conversation Plaintiff had with him from County Jail after the Shearburn trial.  Even one of the

12   involved stated he didn't feel Plaintiff had intended to defraud the investors.  Very sad, when so

13   much could have been avoided from the beginning.  And when the receiver had his chance to

14   really make the investors whole in a skyrocketing real estate market, he did not even get the

15   down payment back from the sale of the commercial real estate.  He was in such a rush to sell

16   everything, but so slow to pay out, that in the end he only netted the receivership five million

17   dollars, with well over forty million  dollars in assets.

18         92.      Plaintiff alleges that the completed investigation so grossly contradicts the

19   original complaint and actions by Defendants, that this was a clear violation of Plaintiff's due

20   process rights, when the outcome of this case was so far different than first believed.

**MEMORANDUM OF POINTS AND AUTHORITIES**

21

22         93.      Plaintiff contends Defendants violated the Due Process Clauses of the Federal and

23   State Constitutions when they failed to give Plaintiff "adequate notice and the opportunity to be

24   heard" when a "significant property interest" was at risk of being lost. The Due Process Clauses

25   of the Fifth and Fourteenth Amendment of the United States Constitution states, "a person

26   cannot be deprived of life, liberty, or property without due process of law." Fifth Amendment.

27         94.      "Basic purport of constitutional requirement of 'procedural due process' is that,

28   before a significant deprivation of liberty or property takes place at the state's hands, affected

1    individual must be forewarned and afforded an opportunity to be heard at meaningful time and in

2    meaningful manner." U.S.C.A. 14th Amendment, Amsden v. Moran C.A.(N.H.) 1990, 904 F. 2d

3    748.

4           95.     "The minimal requirements of notice and a hearing is guaranteed by the Due

5    Process Clause of the 5th and 14th Amendments, especially if the deprivation of a significant life,

6    liberty, or property interest may occur." Black's Law Dictionary.

7           96.     It was the state's intent, when they raided Plaintiff's business, home and storage

8    facilities, to take Plaintiff's company and other real and personal property. The day the receiver,

9    Charles LaBella was appointed to Plaintiff's company, he immediately changed the locks, told

10   Plaintiff's attorney that "Mr. Palmieri is not to come back," and cut off Plaintiff's income and

11   insurance. This immediately alienated Plaintiff and his attorneys. Mr. LaBella wanted control of

12   everything and did not want Plaintiff around. Plaintiff's business, home and storage facilities

13   were "significant property interests." And when they were taken from Plaintiff, without first, an

14   opportunity to be heard and defend himself, Plaintiff's Constitutional Right to Due Process of

15   Law was violated.

16          97.     "Due process forbids any exercise of substantially affecting a defendant's rights

17   without notice." Griffin v. Griffin, U.S. Dist. Col. 1946, 66 S.Ct. 556, 327 U.S. 220, 90 L. Ed.

18   635.

19          98.     "Due process generally requires that certain procedures be met; a person must

20   receive adequate notice and the opportunity to be heard at a meaningful time and in a meaningful

21   manner." Herts v. Smith C.A. 8 (Ark.) 2003, 345 F. 3d 581.

22          99.     "Purpose of the notice under due process clause is to apprise affected individual

23   of, and permit adequate preparation of an impending hearing." "Ordinarily, due process of law

24   requires opportunity of some kind of hearing prior to deprivation of a significant property

25   interest. U.S.C.A. Constitutional of Amendment 14 (Citations).

26          100.    Corporations Code Section 26104 "Department of Corporations has a valid

27   exercise of state's police power. A Department of the State." If the D.O.C. has a "police

28   power," they do have an interest to protect the public. A state's 10th Amendment right, but,

COMPLAINT

1   "subject to due process and other limitations." Black's Law Dictionary. The Department of

2   Corporations does have "certain" powers, but "are not entirely uncontrolled," and must be

3   exercised with due regard to an individual's rights.

4       101.   "Where a person's good name, reputation, honor or integrity is at stake because of

5   what the government is doing to him, notice and opportunity to be heard are essential." U.S.C.A.

6   Constitutional Amendment 14.

7       102.   "Essence of due process is requirement that person in jeopardy of serious loss be

8   given notice of case against him and opportunity to meet it." U.S.C.A. Constitutional

9   Amendment 5, Mathews v. Eldridge, U.S. Va. 1976, 96 S. Ct. 893, 424 U.S. 319, 47 L. Ed. 29,

10  18.

11      103.   There was no grave "emergency" where Defendants could not have come to

12  Plaintiff first. After Plaintiff first started talking to the investors in July of 2001, he was already

13  working with his corporate attorney to get the investors paid. Then, by January of 2002, Mr.

14  Pokorny had his "workout plan" in place (Exhibit D), and all the investors calls were diverted to

15  his office. He was our "trustee" for this. They called Mr. Pokorny, numerous times. They knew

16  they were going to get paid, because the commercial real estate was on the market, with offers

17  and being administered by Mr. Pokorny. And Mr. Pokorny told them this. And the investors

18  told Mr. Openshaw this.

19      104.   Under the California Constitution, Article 1 Section 7:

20          Due process principles under both the state and federal constitutions, require
21          reasonable notice and the opportunity to be heard before the government
            deprives a citizen of a significant property interest." Ogborn v. City of
22          Lancaster (2002) 101 Cal. App. 4th 448, 124 Cal. Rptr. 2d, 238.

23  Section 7(a) states:

24          "A person may not be deprived of life, liberty, or property without due process of law
25          or denied equal protection of the law." And "Notice is significant to enable a
            meaningful response in an indispensable element of due process."
26

27      105.   In Muhammed v. Routh Wreck Service, C.A. 8 Ark.) 1994, 14 F. 3d 24, it states,

28  "Due process requires that prior to action that will affect interest in property, state must provide

a notice reasonably calculated, under the circumstances, to apprise interested parties of pendency of action and afford the opportunity to present their objections." U.S.C.A. Constitutional Amendment 14.

106.    At a "minimum," Plaintiff should have been given notice by the Department of Corporations of the complaint and an opportunity to be heard.  And the court, in hearing the state's complaint to approve a remedy that was so "drastic in character," should have used better discretion when the takeover would have absolutely deprived Plaintiff of property without adequate notice to defend himself, which is mandated by statute.

107.    By not hearing Plaintiff's side, the Defendants basically pulled the rug out from under the viatical investors, when they were just short of getting one hundred percent of their money back, plus the profit that was promised them.  And Plaintiff would not have seen a dime of that money.  Consequently, at the hands of the state and all the attorneys involved, the investors only got twenty-eight percent of their money, not even the down payment Plaintiff put on twenty-two millions dollars worth of real estate; and the closure of Plaintiff's company, which could have helped them also.

108.    Receiverships are so drastic, the court said in Jackson v. Jackson, 253 Cal. App. 2d 1026, 1040-1041 62 Cal. Rptr. 121, 131:

> "Generally, because of its drastic nature, receiverships should not be resorted to unless other remedies are inadequate." The Court unconscionably bypassed statutes, constitutional rights, and other "less onerous remedies," where "caution was not exercised for such a drastic remedy."

109.    California Rules of Court Rule 238 states: "The stringent procedural requirements must be met under Rule 238 before an ex parte appointment of a receiver can be approved."

110.    California Rules of Court Rule 3.1175 – Ex parte application states in Turner v. Superior Court of Kern County (1977) 140 Cal. Rptr. 475, 72 Cal. App. 3d 804: "Appointment of a receiver is a drastic remedy and should be exercised with caution, and order upon ex parte application can only be issued in cases of emergency, upon satisfaction of the stringent procedural requirements of this rule."

COMPLAINT

111.   <u>Code of Civil Procedures Section 564</u> and <u>In re Jamison Steel Corp.</u> 158 Cal. App. 2d 27, 322 P. 2d 246: "The appointment of a receiver for a corporation is a <u>drastic remedy</u> and should not be invoked unless there is an actual or threatened <u>cessation or diminution</u> of the business." C.C.P. Section 564, Subdivision 7.

112.   There was absolutely no "cessation or diminution" of Plaintiff's business. C.P.E.I., which the defendants attacked "as a whole," was a growing corporation with increasing sales and income, poised to double in 2002. Plaintiff had its mortgage company poised for major growth, on the cusp of a skyrocketing real estate and mortgage market. Plaintiff had added new states to its licensure for a total of twelve, and at the prices Plaintiff purchased the thirteen commercial real estate properties for the investors, there was no question those properties were going to double in value. The viatical division of C.P.E.I., which had the problem, was only a small percentage of the total corporation. (See Exhibit C, Chart depicting C.P.E.I. sales, attached hereto.) The viatical sales would not have depicted the total health of the corporation. That's why Plaintiff carved it out and put it in his attorney's hands to be administered.

113.   In <u>McCall v. McCall Bros. Co.</u> 135 Cal. App. 558, 27 2d 648, "Plaintiff brought action and appointment of a receiver, and the trial court made an ex parte order appointing a receiver. Defendant appealed. The sole contention made by the appellant was that trial court erred in making an ex parte order appointing a receiver, as <u>no showing</u> was made that <u>irreparable injury</u> would result unless a receiver was appointed. The court concluded, 'In our opinion the contention must be sustained.'" <u>A.G. Col. Co. v. Superior Court</u>, 196 Cal. 604, 238 P. 926; <u>Fischer v. Superior Court</u>, 110 Cal. 129, 42 P. 561; <u>Tyler v. Park Ridge Country Club</u>, 103 Cal. App. 117, 284 P. 247; <u>Ryan v. Murphy</u>, 39 Cal. App. 640, 179 P. 517; <u>Hobson v. Pacific States Merchantile Co.</u> 5 Cal. App. 94, 89 P. 866.

114.   In <u>Fischer v. Superior Court</u>, supra, the Supreme Court said, at page 138 of the opinion in 110 Cal., 42 P. 561, 562: "The general rule, no doubt, is that <u>so harsh a measure</u> as the appointment of a receiver to take property out of one's possession, <u>without trial</u>, will not be indulged in by a court <u>without previous notice to the defendant</u>. It would be <u>unjustifiable</u>, except

28

1  where it clearly appeared that irreparable injury will be done <u>during the few days necessary for a</u>

2  <u>hearing on notice</u>." <u>Ryan v. Murphy</u>, supra at page 641 or 39 Cal. App., 179 P. 517, 518.

3     115.   In <u>Ryan v. Murphy</u>, supra, at page 641, of 39 Cal. App., 179 P. 517, 518, the court

4  stated: "It is obvious that the receiver in this case was appointed <u>without formal notice</u>.  Such an

5  appointment under established law of this state, cannot be legally made except on a <u>showing of</u>

6  <u>great emergency</u>." "*Ex parte* order appointing a receiver was reversed."

7     The allegations in the Department of Corporations' complaint was an insufficient

8  showing for the court to deprive plaintiff of notice of such a drastic action against him.

9  116. "Power of court to appoint receiver is a delicate one and is to be exercised with caution lest

10  injury be done to the parties and their property, and appointment of a receiver should not be

11  made <u>without a full and complete hearing</u> unless the due administration of justice clearly requires

12  it." <u>Cohen v. Herbert</u> (1960) 186 Cal. App.2d 488, 8 Cal.Rptr. 922.

13  ///

14  ///

15  The court has an obligation to "adequately protect the rights of the parties."  And that means the

16  corporation and its employees as well.  The only plausible way is a "full and complete hearing"

17  where the corporation can protect itself.

18     117.   There are other remedies available prior to the installation of a receiver to

19  adequately protect <u>all</u> the parties.  In <u>Alhambra-Shumway Mines, Inc. v. Alhambra Gold Mine</u>

20  <u>Corp.</u> 116 Cal. App. 2d 869, 872, 254 P.2d 599 and <u>Dabney Oil Co. v. Providence Oil Co.</u>,

21  supra, 22 Cal App. 233, 133 P. 1158 we see:

22
23     (a) "Ordinarily, if there is any other remedy besides appointment of a receiver, and the
      other remedy is <u>less severe</u> in its results and will adequately protect the rights of the
24     parties, a court should not take property out of the hands of its owner."

25     (b) "Where an injunction will protect all the rights to which the application where the
      applicant for the appointment of a receiver appears to be entitled, <u>a receiver will not be</u>
26     <u>appointed</u>." (citing cases)

27     (c) Instant case: injunctive relief was requested.  That could have been enough in the
      few days necessary for a hearing, as well.  Or, other remedies, considering the
28     circumstances.

118.    CCP §564, subd. 7 states:

(a) "The trial court's discretion in appointing a receiver, is not an entirely uncontrolled one and must be exercised with due regard to the facts, especially where serious injury to name and goodwill of a solvent corporation may result from the appointment of a receiver."

(b) "Court's power to appoint receiver for corporation... must be exercised with caution and only for such time and to such extent as may be necessary to preserve corporation's property and protect rights and interests of its stockholders."

119.    Appointment of receiver in instant case should not have been meant to be permanent or put Plaintiff's company out of business, especially where complaint of the investors only encompassed a small percentage of Plaintiff's corporation. The idea of insolvency is so thoroughly associated in the minds of the public with the appointment of a receiver, which in the final analysis, there should be strong concern of the law for corporate business welfare, where even debtors feel themselves absolved from obligation to pay.

120.    Plaintiff put all viatical affairs in his attorney's hands prior to the filing of the compliant. Mr. Openshaw was told this by the investors. He knew it. Yet, there was nothing in the complaint that stated this, nor was there anything in the complaint that stated "great emergency" or "irreparable injury" would result unless a receiver was appointed. The complaint provided no exhibits or affidavits. It was based on Mr. Openshaw's "conclusions" and "conjecture." And the court apparently asked for none, even when it was to approve so drastic a measure that would affect so many.

121.    Under Code of Civil Procedure § 564, subd. 7, it states: "Strong proof is essential to justify corporate receivership where specific and detailed evidence that corporation's business is being successfully conducted at a profit is presented in opposition to receivership."

122.    The above section is very specific. "Strong proof" can only come from evidence on the part of a pleader. And "specific and detailed evidence" can only come from defendant, at a hearing, prior to the appointment, or "during the few days necessary for a hearing on notice."

COMPLAINT

123.    In the case of <u>Golden State Glass Corp. v. Superior Court of Los Angeles County</u>, 13 Cal. 2d 384, 393, 90 P. 2d 75, 79, it further states: "It is true that the complaint contains averments alleging fraud and mismanagement on the part of Shenberg and Goldman, but these are stated either as conclusions or upon information and belief.  <u>Stronger proof</u> is essential to justify a receivership.  A complaint based largely upon generalities and conclusions of the plaintiff and upon information and belief <u>is insufficient upon which to appoint a receiver.</u>" <u>Mason v. San-Val, etc. Co., 1 Cal.2d 670 36 P. 2d 616</u>.

124.    "Stronger proof," "detailed evidence."  These are old cases and still good law. They are explicit.  The court abused its discretion when it appointed so drastic a measure without a word from plaintiff.  C.P.E.I. was a growing, eleven year old concern, profitable and employed many people.  The court allowed its closure.  It allowed people to lose their jobs.  It allowed those investors to lose over seventy percent of their investments.  Especially when the corporation's attorney, as trustee, was administering the viatical program.  In the next cases, we see the validity of Mr. Pokorny's position.

125.    In <u>Slinack et al. v. Superior Court of Tulare County, et al.</u> (1932) 216 Cal. 99, 13 P. 2d 670: "Where trustees had been appointed by the corporation to take possession of the trust residence and <u>to actively administer trust</u>, facts by defendant <u>held not to present case of great emergency</u> so as to authorize appointment of receive upon ex parte application."

126.    Under CCP § 564, in <u>Golden State Glass Corp. v. Superior Court of Los Angeles County</u>:  <u>Attorney employed</u> by two directors who owned two-thirds of the corporate stock and were in actual control of corporation's business affairs, <u>should have been recognized by trial court</u> as attorney for corporation, entitled to represent it <u>in opposing proposed appointment of receiver</u> for corporation."  (Appellate assention).

127.    There are so many cases detailing the destruction of companies and people's lives by parties whoseekthe appointment of a receiver, where courts give [no] consideration to the business welfare or cost to the parties.

128.    <u>Elson v Nyhan</u> (App. 1 Dist. 1941) 45 Cal. App. 2d 1, 113 P. 2d 474 finally tells us:

"Receivers are often <u>legal luxuries frequently</u> representing an <u>extravagant cost</u> to a losing litigant. When it appears that no reasonably certain benefit will result to a litigant, and a <u>distinct disadvantage</u> will result to another, courts should weigh <u>carefully</u> the propriety of appointing a receiver."

## CONCLUSION

129. As a direct and proximate result of the conduct of Defendants, and each of them, Defendant's rush to judgment violated Plaintiff's due process rights to notice and a hearing before a thorough enough investigation took place, whereby, no specific intent to defraud the viatical investors, by Plaintiff, existed. These actions by Defendants directly resulted in a monetary yield to the viatical investors that was less than acceptable, when Plaintiff already had a justifiable procedure in effect to make payment to the viatical investors.

130. As a further proximate result of the aforesaid conduct of Defendants and each of them, the installation of a receiver to Plaintiff's corporation was a deliberate act to shut Plaintiff's company down, which was not purported to be part of the order by the court, and was such a drastic remedy, when no great emergency or irreparable injury was to result, that the court abused its discretion when it failed to consider remedies short of a receivership.

131. As a further and proximate result of the aforesaid conduct of Defendants and each of them, that Plaintiff[s] were so severely damaged in loss of earnings and benefits, loss of business income, loss of rental income, loss of personal and business property, and all great and incidental expenses according to proof.

132. Plaintiff alleges that the information from the completed investigation and accounting, conversations and letters from the receiver's attorney, and records recently ascertained, contradicts the allegations in the original complaint by Defendants in such a gross manner, that the facts brought by Plaintiff in this lawsuit could have been avoided.

133. Plaintiff further alleges that the receiver, Charles LaBella, did not possess the appropriate bond (undertaking) for the C.P.E.I. receivership, nor for the duration of the five years that he kept the receivership open, therefore violating CCP § 567.

134. Plaintiff[s] are also entitled to prejudgment interest pursuant to California Civil Code § 3291 and according to law, the amount to be ascertained at time of trial.

COMPLAINT

135. Jurisdiction: As to the federal and state claims brought before the District Court, Plaintiff asks the Court to hear the federal claims as well as the state claims, as Defendants have violated both federal and state law. Under "Pendent/Supplemental Jurisdiction," 28 U.S.C.A. §1367: "The Federal Court has jurisdiction over the federal claims and also has jurisdiction over the state claims. Both claims are part of the same case or controversy...over which the Court has original jurisdiction. The District Court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction."

In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct.1130(1966), recognizes "that in our federal system a plaintiff who has federal claims against a defendant will often find that the same wrongful conduct that grounded the federal claim has given rise to a claim under state law as well." 28 U.S.C.A. §1367.

Further in Gibbs; On certiorari, the United States Supreme Court reversed. In an opinion by Brennen, J, it was held (Part I), "expressing the unanimous view of the Court, that the District Court had the power to exercise pendent jurisdiction over the plaintiff's nonfederal claims and that it was not error to refuse to dismiss such claims."

WHEREFORE, Plaintiff prays for judgment against the Defendants and each of them as follows:

1. General damages in the amount of $111,572,200.00;

2. Punitive damages in the amount of $111,572,200.00;

3. Prejudgment interest;

4. Attorney fees in a sum to be determined by the court;

5. For costs of suit incurred herein; and

6. For such other and further relief as the court may deem proper.

Dated: 2-22, 2013                    Respectfully Submitted:

C.J. Palmieri, Plaintiff by and for Plaintiffs

Typed at Plaintiff's specific instruction by:
Catalyst Legal
6608 Penney Way Carmichael CA 95608
Tel: 916-644-3090
Sac County LDA #2011-11  Exp. 10.31.13

33

COMPLAINT

# EXHIBIT "A"

STATE OF CALIFORNIA                                                Dave Jones, *Insurance Commissioner*

## DEPARTMENT OF INSURANCE
INVESTIGATION DIVISION
1350 FRONT STREET #4061
SAN DIEGO, CA 92101
(619) 652-5600
(619) 525-4253 (FAX)
www.insurance.ca.gov



Carmen John Palmieri, V19689
C/O: CA Dept. of Corrections
California Men's Colony
P.O. Box 8103
San Luis Obispo, CA 93403

## PROPERTY READY FOR RELEASE

Date:     April 6, 2011
Case #:   SD 43889
SW#:      27960, 27961, 27962, 27972, 27973, 27974, 27975, 27976, 27977, 27978, 28282, 28283, 28284,
          28285, 28286, & 28287
Item#/Description of items to be released:  Documentary Evidence (multiple boxes of business records)

Dear Mr. Palmieri,

Our Evidence Control records show our agency is in possession of property belonging to you.  This
property is now available to be returned.

To claim your property, please contact Investigator Minerva Lopez during normal business hours,
Monday through Thursday, 9:00AM – 5:00 PM.

To claim your property, you must have this letter and photo identification prior to the property being
released to you.  No property will be released with these two requirements.

If you are assigning a person to pick up property, they must have this letter, their photo identification, and
a notarized letter from you authorizing them to pick up your property.

X  Proof of ownership required if line is checked.

**Property not picked up in sixty (60) days of the date listed above will be disposed of in accordance
with applicable State laws.**

Thank you,

Minerva Lopez, Supervising Investigator
Phone # 619-652-5605, Fax # 619-525-4253

Consumer Hotline (800) 927-HELP • Producer Licensing (800) 967-9331

ID-LTR-007 04/08

4-13-11 Wrote to Stacey to P/4
if needed.
7-12-11 Sent letter to Lopez for
Allan to pick up.
7-27-11 Allan
talked to Lopez.
Files have been
destroyed. But
inventory lists
are on
the way.

**DEPARTMENT OF INSURANCE**
INVESTIGATION DIVISION
1350 FRONT STREET #4061
SAN DIEGO, CA 92101

Received
APR 11 2011

Carmen John Palmieri, V19689
C/O: CA Dept. of Corrections
California Men's Colony
P.O. Box 8103
San Luis Obispo, CA 93409-8103

7003 2260 0003 8645 4224

**CERTIFIED MAIL**
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS.

8-13-2

Received
APR 11 2011
Mailroom - C¢
Certified N¢

neopost
04/07/2011
Mailed From 92101
$5.710
045J83070088

US POSTAGE



**SENDER: COMPLETE THIS SECTION**

- ☐ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ☐ Print your name and address on the reverse so that we can return the card to you.
- ☐ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CARMEN J. PALMIERI
V19689
C/O: DEPT. OF CORRECTIONS
P.O. BOX 8103
SAN LUIS OBISPO, CA 93409-8103

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Ken Hall_                    ☐ Agent
                               ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
_Rule Gonda_                     4-26-11

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7003 2260 0003 8645 6224

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

STATE OF CALIFORNIA                                    Dave Jones, *Insurance Commissioner*

# DEPARTMENT OF INSURANCE

INVESTIGATION DIVISION
1350 FRONT STREET #4061
SAN DIEGO, CA 92101
(619) 652-5600
(619) 525-4253 (FAX)
www.insurance.ca.gov



*Received*
*8-8-11*

Carmen John Palmieri, V19689
C/O: Allan Bloom
1750 El Camino Real, Apt. K210
Encinitas, CA 92024

Date:     July 21, 2011
Case #:   SD 43889
SW#:      27960, 27961, 27962, 27972, 27973, 27974, 27975, 27976, 27977, 27978, 28282, 28283, 28284,
          28285, 28286, & 28287
Item#/Description of items:  Documentary Evidence -boxes of business records seized
                             during the execution of above-referenced search warrants.

Dear Mr. Palmieri,

Our Evidence Control records show our agency disposed (destroyed) the property above-described. This property was shredded after the sixty days of notification to you (4/11/11) in accordance to the applicable laws. We notified you via certified letter (copy attached) that you had 60 days to make arrangements to pick up the evidence from the time you received our letter. The certified letter was mailed to you on April 6, 2011 and received/signed on April 11, 2011. As such, we disposed of the said property on June 23, 2011. Through your friend, Allan Bloom, you first made contact with our office on July 18, 2011.

**I'm enclosing a copy of the signed court declaration and order to destroy/release the search warrant evidence referenced above. This order includes a copy of the inventory sheets as requested by you.**

Thank you,

Minerva Lopez, Supervising Investigator
Phone # 619-652-5605, Fax # 619-525-4253

Consumer Hotline (800) 927-HELP • Producer Licensing (800) 967-9331

ID-LTR-007 04/08

## AUTHORIZATION FOR PROPERTY RELEASE

Date: _July 16, 2011_

Case #: _____SD43889_____

Warrant #: _Multiple – see enclosed letter_

I, _Carmen John Palmieri_ authorize the California Department of Insurance,

Investigation Division, to release any property belonging to me, which were

cleared for release under the above listed case number to _Allan Bloom_,

_____(PRINT NAME)_____

_Friend_

_(RELATIONSHIP TO OWNER)_

I thereby release the California Department of Insurance, and all of its Investigators and employees from any and all further claims I may have regarding the property or any liability in connection thereof.

Date: _7-16-11_   Signed: _____

Signature verified by Sheriff's Deputy or Correctional Office (assigned to Correctional facility)

Print Name_____        Signed _____

Officer ID#_____

**\*Official Seal/Stamp form Correctional Facility Required\***

ID-EVI-001 04/08

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO**

**CENTRAL DIVISION**

|  |  |
|---|---|
| IN RE SEARCH WARRANT NO.'S<br>27960, 27961, 27962, 27972, 27973<br>27974, 27975, 27976, 27977, 27978<br>28282, 28283, 28284, 28285, 28286<br>& 28287 | DECLARATION AND ORDER TO<br>DESTROY/RELEASE PROPERTY SEIZED<br>PURSUANT TO A SEARCH WARRANT |

I, Minerva Lopez, declare as follows:

During the course of my duties as a Senior Investigator employed by the California Department of Insurance, San Diego Investigation Division, on March 22, 2002, I executed a search warrants No. 27960, 27961, 27962, 27972, 27973, 27974, 27975, 27976, 27977, and 27978. On July 11, 2002, further warrants were executed at various bank locations under search warrants 28282, 28283, 28284, 28285, 28286 and 28287. Seized, were records for Carmen John Palmieri, C. Palmieri Enterprises, Inc., doing business as National Medical funding, Titan Asset Management, and Sierra Funding Group, which are listed on the receipt and inventory, copies of which are attached hereto as "Attachment A" and incorporated herein by reference. As all criminal proceedings have concluded and being of no further value as evidence, I hereby request the court authorize the release of said property to Carmen John Palmieri.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Diego, California on March 15, 2011.

Minerva Lopez

IT IS SO ORDERED.

DATED: 3-15-11

JUDGE OF THE SUPERIOR COURT

CLERK'S CERTIFICATE

The foregoing document, consisting of 27 page(s) is a full, true, and correct copy of the ☑original ☐copy on file in this office.

Clerk of the Superior Court

MAR 15 2011 by _____
Date

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## San Diego Central District

## RECEIPT AND INVENTORY

**Search Warrant # 27960**                     **Date Executed: 03-28-02**

**Name: C. PALMIERI ENTERPRISES, INC.**    **Location: 3517 Camino del Rio South # 201**
                                                                   **San Diego, CA 92108**

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | 1 | 2 | A | Tapes, Disk, Labels, Telephone Msg Forms, Misc Papers. |
| 1 | 2 | 3 | E | Time Cards |
| 1 | 3 | 3 | E | Time Cards, Diskettes-6, 2-Radio Relays Company, Letterhead, Company Letterhead. |
| 1 | 4 | 3 | C | Misc. Docs |
| 1 | 5 | 7 | A | 2 Files, 1 Cert. Of Liability, LLC Status Report |
| 2 | 6 | 8 | R | 2000 Viatical Files |
| 3 | 7 | 8 | R | 2001 Viatical Files |
| 4 | 8 | 8 | R | 1999-2000 Viaticals, Notes of Gene |
| 5 | 9 | 7 | J | Viatical License In Frame |
| 5 | 10 | 8 | Q | Advertisements, HIV Drug Book |
| 5 | 11 | 8 | R | Sierra Funding Group Manual |
| 5 | 12 | 8 | R | Viatical Settlement Company Info. Packet |
| 5 | 13 | 8 | R | Viatical Docs |
| 5 | 14 | 8 | M | National Medical Funding Application |
| 5 | 15 | 8 | M | Viatical Advertisements |
| 6 | 16 | 4 | A | Employee Records, Lock Box |
| 6 | 17 | 4 | A | Employee Records |
| 6 | 16 | 7 | K | Letter Stating $1,000,000 Invested in Another Co. Newspaper article Ins. –Death Note—Interest & Letter |

1

"ATTACHMENT A"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## San Diego Central District

## RECEIPT AND INVENTORY

Search Warrant # 27960                    Date Executed: 03-28-02

Name: C. PALMIERI ENTERPRISES, INC.      Location: 3517 Camino del Rio South # 201
                                                    San Diego, CA 92108

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 6 | 17 | 7 | K | 3 Audio Tapes-Viatical Bus. Cards |
| 6 | 18 | 4 | B | Sierra Funding Transactions |
| 6 | 19 | 4 | B | Sierra Funding Transactions |
| 6 | 20 | 8 | H | Right Side Desk Drawer, Phone Msg. Logs, Airborne receipts. |
| 6 | 21 | 8 | M | National Medical Funding Docs. |
| 7 | 22 | 8 | M | Sierra Properties Docs |
| 7 | 23 | 8 | M | Letter from Doc. |
| 7 | 24 | 8 | M | Sierra Properties Docs. |
| 7 | 25 | 8 | M | Sierra Properties |
| 7 | 26 | 8 | M | Sierra Properties |
| 7 | 27 | 7 | D | Bank Cards-Georgia Sec. Of State. Financial Report & Statement, Bank Accts. Viatical Ad- Payroll Tax Coupons, Fund Control Acct. |
| 7 | 28 | 7 | L | Sierra Funding |
| 7 | 29 | 5 | F | Blank Check Books, Deposit Books for C. Palmieri Enterprises. |
| 7 | 30 | 7 | D | Viatical Package Returned Fund Control Bank Stamp |
| 8 | 31 | 8 | I | Left Desk Drawer Contents, Misc. Files/Rig. |
| 9 | 32 | 5 | F | Bank Deposit Stamp |
| 9 | 33 | 9 | M. Box | Mail |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27960        Date Executed: 03-28-02

Name: C. PALMIERI ENTERPRISES, INC.     Location: 3517 Camino del Rio South # 201
                                                San Diego, CA 92108

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|-----|------|------|------|-------------|
| 9 | 34 | 8 | N | Sierra Funding Group |
| 9 | 35 | 8 | N | Sierra Funding Group |
| 9 | 36 | 8 | N | Sierra Funding Group |
| 9 | 37 | 8 | N | Sierra Funding Group |
| 9 | 38 | 8 | N | C.Palmieri Employee Hand Book |
| 9 | 39 | 8 | N | National Medical Funding |
| 9 | 40 | 8 | N | Sierra Funding Group |
| 9 | 41 | 8 | N | Sierra Funding Group Manual |
| 10 | 42 | 5 | A | Sierra Funding Invoices 2001 |
| 11 | 43 | 5 | A | Sierra Funding Sales Receipts 2001 |
| 12 | 44 | 5 | A | Business financial records |
| 13 | 45 | 5 | A | Bank Statements 2001, Financial Statements 2001, General Ledgers 2001 |
| 14 | 46 | 7 | G | Financial Reports |
| 14 | 47 | 7 | H | Sierra Loan Docs |
| 14 | 48 | 7 | G | Financial Docs |
| 14 | 49 | 7 | L | Sierra & Viatical Tapes Video/Audio |
| 14 | 50 | 7 | H | Sierra Loan Docs |
| 15 | 51 | 8 | C | Vendor Invoices, Asst. Companies |

3

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27960                    Date Executed: 03-28-02

Name: C. PALMIERI ENTERPRISES, INC.    Location: 3517 Camino del Rio South # 201
                                                 San Diego, CA 92108

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|-----|------|------|------|-------------|
| 16  | 52   | 8    | C    | Sierra Group Files 2000 |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and
things seized by him this day in the search of the premises described in said warrant and taken pursuant
thereto:
Date: 3\28\02                         Signed: _____
Time: 7.40                            Agency/Badge #: _____

The search warrant was issued on _March 22, 2002_, by the Honorable _Charles R. Hayes_, Judge of
the Superior Court of the State of California, in and for the County of San Diego, 330 West Broadway,
San Diego, California and filed under court number _____27960_____.

For further information concerning this search warrant, contact _Minerva Lopez_ at _(619) 525-4069_.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written
motion in the court of the above-mentioned judge who issued the warrant, seeking return of the
property seized pursuant to this warrant.

I, _____ , the officer by whom this warrant was executed, do swear that
the above inventory contains a true and detailed account of all property taken by me on the warrant.
Subscribed and sworn to before me on this __28th__ day of ___March___, 2002.

_____        _____
Charles R. Hayes, Judge of the Superior Court  Officer Executing Search Warrant
San Diego Central Division

4

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27961                       Date Executed:  03-28-02

Name:  SIERRA FUNDING GROUP          Location:  3517 Camino del Rio South # 400
                                                San Diego, CA 92108

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|-----|-------|------|------|-------------|
| 1 | 1 | 1 | B | Phone Logs |
| 1 | 2 | 1 | B | Employee List |
| 1 | 3 | 1 | B | Loan Docs. |
| 1 | 4 | 1 | B | Employee handbook, phone message book, log of declines, receptionist daily operational notes (2) pads, employee extension list |
| 2 | 5 | 1 | B | Loan Docs. |
| 3 | 6 | 1 | B | Loan Docs. |
| 4 | 7 | 2 | A | National Medical Foundation Adv., Lic, etc. (sec state docs.) |
| 4 | 8 | 2 | B | SFG Website Printed |
| 4 | 9 | 2 | B | CJ Palmieri Ent. Check/office supplies |
| 4 | 10 | 2 | C | Viatical Brochures |
| 4 | 11 | 2 | A | Business cards, records, NMF Flyers |
| 4 | 12 | 2 | C | Computer floppy disks |
| 5 | 13 | 2 | D | NMF Letterhead |
| 5 | 14 | 2 | D | NMF Envelopes |
| 5 | 15 | 17 | B | Employee Handbook |
| 5 | 16 | 11 | C | Sierra Funding Balance Sheets |

1

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27961                    Date Executed: 03-28-02

Name: SIERRA FUNDING GROUP          Location: 3517 Camino del Rio South # 400
San Diego, CA 92108

| BOX | ITEM # | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 5 | 17 | 11 | C | CJ Palmieri Ent. Employee list and e-mail addresses |
| 5 | 18 | 11 | B | Correspondence; Rocky Mountain Funding is Sierra Funding Group, Lic. In Colorado as Rocky Mountain Funding |
| 5 | 19 | 9 | E | Employee phone list, employee e-mail list, brochure; Sierra Funding |
| 5 | 20 | 16 | D | Computer Diskette, Colorado Inc. Docs., Palmierie's profit/loss report |
| 6 | 21 | 2 | B | Computer |
| 7 | 22 | 2 | B | Computer |
| 8 | 23 | 2 | B | Computer |
| 9 | 24 | 2 | B | Computer |
| 10 | 25 | 2 | B | Computer |
| 11 | 26 | 2 | B | Computer |
| 12 | 27 | 3 | A | Computer |
| 13 | 28 | | | 14 Hard Drives/ D. Fortman |
| 13 | 29 | | | 1 Zip Drive |
| 13 | 30 | | | 1 Binder |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: 3-28-02                    Signed: _____

Time: 1000 P.m                  Agency/Badge #: SDCDA  C8

2

SUPERIOR COURT OF CALIFORNIA, C
San Diego Central Dis

RECEIPT AND INVEN

Search Warrant # 27962                    Date E

Name: SIERRA FUNDING GROUP                Locatio

| BOX | ITEM# | ROOM | AREA | |
|-----|-------|------|------|---|
| 1 | 1 | 3 | A | Employment ver |
| 1 | 2 | 3 | A | Earnings stateme |
| 1 | 3 | 3 | A | 2000 Tax return |
| 1 | 4 | 3 | A | 1999 Tax return |
| 1 | 5 | 3 | A | 1998 Tax return |
| 1 | 6 | 1 | B | 2000 Tax form s |
| 1 | 7 | 1 | B | 1999 Tax form s |
| 1 | 8 | 1 | B | County Tax Col |
| 1 | 9 | 1 | B | Trust statement, |
| 1 | 10 | 1 | B | W-2 forms for C |
| 1 | 11 | 1 | B | Tax schedule-E |
| 1 | 12 | 1 | B | 1998 Tax statem |
| 1 | 13 | 1 | B | 2000 Tax form s<br>Asset Managem |
| 1 | 14 | 3 | A | Wells Fargo Ban |
| 1 | 15 | 3 | A | Wells Fargo Ban |
| 1 | 16 | 3 | A | IOF Foresters st |
| 1 | 17 | 3 | A | C. J. Palmieri' bu |
| 1 | 18 | 3 | A | Price Self Storag |
| 1 | 19 | 3 | A | Union Bank che |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
San Diego Central District

**RECEIPT AND INVENTORY**

Search Warrant # 27962                    Date Executed:  03-28-02

Name:  SIERRA FUNDING GROUP            Location:  1627 Calle Plumerias Street
                                                                            Encinitas, CA 92024

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | 1 | 3 | A | Employment verification- C & C Palmieri |
| 1 | 2 | 3 | A | Earnings statement- C. & C. Palmieri 02/27/02-03/15/02 |
| 1 | 3 | 3 | A | 2000 Tax return |
| 1 | 4 | 3 | A | 1999 Tax return |
| 1 | 5 | 3 | A | 1998 Tax return |
| 1 | 6 | 1 | B | 2000 Tax form schedule K- CS/Canyon Pk. Apts. |
| 1 | 7 | 1 | B | 1999 Tax form schedule K- CS/Canyon Pk. Apts. |
| 1 | 8 | 1 | B | County Tax Collector property tax notices- 2001 |
| 1 | 9 | 1 | B | Trust statement, 1997- C. & C. Palmieri |
| 1 | 10 | 1 | B | W-2 forms for C. & C. Palmieri |
| 1 | 11 | 1 | B | Tax schedule-E & handwritten notes |
| 1 | 12 | 1 | B | 1998 Tax statements/W-2 forms/notes |
| 1 | 13 | 1 | B | 2000 Tax form schedule K- CJ/Mini Storage/Titan Asset Management |
| 1 | 14 | 3 | A | Wells Fargo Bank letter- acct. 073-4963697 |
| 1 | 15 | 3 | A | Wells Fargo Bank statement 3/01- C. & C. Palmieri |
| 1 | 16 | 3 | A | IOF Foresters statement- C. Palmieri |
| 1 | 17 | 3 | A | C. J. Palmieri' business card for Sierra Mortgage |
| 1 | 18 | 3 | A | Price Self Storage invoice, 12-06-01 |
| 1 | 19 | 3 | A | Union Bank checkbook/check register |

1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27962

Date Executed:  03-28-02

Name:  SIERRA FUNDING GROUP

Location:  1627 Calle Plumerias Street
Encinitas, CA 92024

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | 20 | 8 | B | Wells Fargo Bank statements/slips |
| 1 | 21 | 8 | B | Wells Fargo Bank slips |
| 1 | 22 | 8 | A | CA Bank & Trust check #1031 to C.J. Palmieri |
| 1 | 23 | 8 | F | World Savings loan statements/ copies of two checks |
| 1 | 24 | 10 | A | Morgan Stanley statements |
| 2 | 25 | 6 | B | Financial telemarketing records from 1998 |
| 2 | 26 | 6 | B | Viatical telemarketing speech/telemarketing records |
| 2 | 27 | 8 | C | Various bank statements, deposit slips, loan statements |
| 2 | 28 | 10 | B | General ledger |
| 2 | 29 | 8 | E | "Our File For 2000" tax documents |
| 2 | 30 | 8 | E | Financial statement, 3 pp |
| 3 | 31 | 11 | - | Unopened mail-Morgan Stanley/Dixieline Builders Fund |
| 4 | 32 | 10 | A | Property files |
| 5 | 33 | 10 | A | Property files |
| 3 | 34 | 8 | E | Employee pay stubs 01/00- C. & C. Palmieri |
| 3 | 35 | 8 | E | Morgan Stanley statements, 07/01 |
| 3 | 36 | 8 | E | Wells Fargo Bank statement acct. #0790-218499 |
| 3 | 37 | 8 | E | Wells Fargo Bank statement acct. #679-0615223, 12/01 |
| 3 | 38 | 8 | E | Wells Fargo Bank statements- rental properties |

2

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

## RECEIPT AND INVENTORY

Search Warrant # 27962        Date Executed: 03-28-02

Name: SIERRA FUNDING GROUP      Location: 1627 Calle Plumerias Street
                                              Encinitas, CA 92024

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|-----|-------|------|------|-------------|
| 3 | 39 | 8 | E | First Security Bank statement, acct. #0889992614727 |
| 3 | 40 | 8 | E | Statement of Information |
| 3 | 41 | 8 | A | Wells Fargo Bank transaction records, acct. #0790-218499, 01/2002 |
| 3 | 42 | 8 | D | Wells Fargo Bank statements/cancelled checks, acct. #0790-218499 |
| 6 | 43 | 10 | A | Financial records |
| 7 | 44 | 10 | A | Property & insurance records |
| 3 | 45 | 8 | E | Hernandez file- Titan Asset Management |
| 8 | 46 | 10 | A | Property records & misc. |
| 9 | 47 | 10 | A | Computer documentation |
| 9 | 48 | 10 | A | Various CD's |
| 9 | 49 | 10 | A | 3 ½" Floppy disks |
| 9 | 50 | 10 | A | IDE hard drive (evidence copy) |
| 9 | 51 | 10 | A | Kodak Funsaver 35 (CFT photos) |
| 10 | 52 | 6 | A | Palmieri business records |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: 3-28-02           Signed: _____

Time: 3:00 PM         Agency/Badge #: 68 SDC DA

3

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
**San Diego Central District**

**RECEIPT AND INVENTORY**

Search Warrant # 27972                         Date Executed:  03-28-02

Name:  C. PALMIERI ENTERPRISES, INC.     Location:  3517 Camino del Rio South # 201
San Diego, CA 92108

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | 1 | 7 | E | C. Palmieri Corporate Minutes |
| 1 | 2 | 7 | E | Sierra Properties |
| 1 | 3 | 7 | E | Sierra Funding Group |
| 1 | 4 | 7 | E | Sierra Properties |
| 1 | 5 | 7 | E | C. Palmieri Enterprises |
| 2 | 6 | 3 | A | Flyer |
| 2 | 7 | 7 | E | Titan Asset Agreement |
| 2 | 8 | 8 | G | Rolodex, CJ Misc File, Summary of Properties |
| 2 | 9 | 7 | D | Expenses-Income 2001, 2 Viatical ADS, Prome Life Partners, Radio Broadcast Promo, Viatical Business Cards, Viatical Contracts, Viatical Application |
| 2 | 10 | 7 | D | Money Order w/ Fedex Payroll |
| 2 | 11 | 6 | M | C.J. Palmieri Inc./AKA Rocky Mountain Fund |
| 2 | 12 | 6 | M | Titan Workers Comp for LLC |
| 2 | 13 | 6 | M | C.J. Palmieri owned LLC |
| 3 | 14 | 8 | B | Titan Asset Management, General Ledger by Property 2000 |
| 4 | 15 | 8 | A | Vendor Invoices 2000, C.J Palmieri Enterprise |
| 5 | 16 | 8 | A | Vendor Invoices 2000, C.J. Palmieri Enterprise |
| 6 | 17 | 8 | B | Vendor Invoices 2000, C.J. Palmieri Enterprise |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
**San Diego Central District**

**RECEIPT AND INVENTORY**

Search Warrant # 27972        Date Executed:  03-28-02

Name:  C. PALMIERI ENTERPRISES, INC.    Location:  3517 Camino del Rio South # 201
                                                San Diego, CA 92108

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 7 | 18 | 8 | B | Vendor Invoices 2000, C. Palmieri Enterprises |
| 8 | 19 | 5 | C | Misc. Accounting Records, Trial Balances, Financial Statements, Bank Reconciliation's. |
| 9 | 20 | 8 | B | C.J. Palmieri Corporations, Cancelled Checks 2000 |
| 10 | 21 | 7 | F | Financial Records |
| 11 | 22 | 7 | F | Financial Records |
| 12 | 23 | 8 | P | Misc. Financial Docs. |
| 13 | 24 | 8 | O | Titan Asset Management Income Statement & G/L |
| 14 | 25 | 8 | O | Income Statement & General Ledger |
| 15 | 26 | 7 | D | 1CD-2Floppy Disks-1 Organizer |
| 15 | 27 | 7 | F | Titan Docs |
| 15 | 28 | 7 | F | Titan Docs |
| 15 | 29 | 7 | A | Sierra Properties |
| 15 | 30 | 7 | B | Sierra Funding Group Advertisement |
| 15 | 31 | 6 | M | C.J Palmieri owned LLC's |
| 15 | 32 | 5 | H | Asst. General Ledger Reports, Bank Acct Info. FEIN Info. Income Statements. |
| 15 | 33 | 5 | E | Sierra Funding Sales Journal 2002 |
| 15 | 34 | 5 | E | Sierra Funding1998/1999 Tax Refunds, CK Register Postings & 200/2001 Gen. Journal Postings |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27972                    Date Executed: 03-28-02

Name: C.&PALMIERI ENTERPRISES, INC.    Location: 3517 Camino del Rio South # 201
                                                  San Diego, CA 92108

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 16 | 35 | 9 | Mail | Mail |
| 16 | 36 | 5 | F | Titan Income Statement Mar. 2001 |
| 16 | 37 | 5 | F | Sierra Funding, Voided Checks, Deposits, Out-of-State License Info. |
| 16 | 38 | 7 | M | Clinical Oncology Book, Hand written Report/Diagnosis on Mr. Notz. |
| 16 | 39 | 8 | M | Viatical Info., Titan Asset Mgmnt Investors Report |
| 16 | 40 | 5 | C | Yardi Real Estate Accounting System |
| DF | 41 | 2 | C | Duplicate Hard Drives-1 |
| DF | 42 | 4 | C | Duplicate Hard Drives-3 |
| 17 | 43 | 8 | C | Titan Financial, Titan Property Info. |
| 18 | 44 | 3 | M | Sierra Funding Corporation, C.Palmieri Enterprises. |
| 19 | 45 | 3 | B | C.P.E.I. Assorted Docs. |
| DF | 46 | 6 | D | Duplicated Hard Drives-1 |
| DF | 47 | 7 | PC | Duplicated Hard Drives-1 |
| DF | 48 | 8 | PC | Duplicated Hard Drives-1 |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: 3/28/02

Time: 7:40

Signed: _____

Agency/Badge #: 108

3

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
**San Diego Central District**

**RECEIPT AND INVENTORY**

Search Warrant # *27973*                    Date Executed: *3-28-02*

Name: *PALMIERI RESIDENCE*          Location: *1627 Calle Plumerias*
*ENCINITAS, CA*

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|-----|------|------|------|-------------|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  | *WARRANT NOT SERVED* | | |
|  |  |  |  |  |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date:_____          Signed:_____

Time:_____          Agency/Badge #:_____

The search warrant was issued on *3-28-02*, by the Honorable *RONALD DOWITZ* Judge of the Superior Court of the State of California, in and for the County of San Diego, 220 West Broadway, San Diego, California and filed under court number *27*_____.

For further information concerning this search warrant, contact *M. LOPEZ* at *525-4069*.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

I, _____ , the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant.

Subscribed and sworn to before me on this _____ day of _____, 2001.

_____          _____
Judge                                                        Officer Executing Search Warrant

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27974          Date Executed: 3-28-02

Name: SIERRA FUNDING GROUP     Location: 3517 Camino del Rio S. #400
San Diego, CA

| BOX | ITEM # | ROOM | AREA | DESCRIPTION |
|-----|--------|------|------|-------------|
|     |        |      |      |             |
|     |        |      |      |             |
|     |        | NOTHING | SEIZED |          |
|     |        |      |      |             |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date:_____     Signed:_____

Time:_____     Agency/Badge #:_____

The search warrant was issued on 3-28-02, by the Honorable Ronald Dowitz, Judge of the Superior Court of the State of California, in and for the County of San Diego, 220 West Broadway, San Diego, California and filed under court number 27974.

For further information concerning this search warrant, contact M. LOPEZ at 525-4069.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

I, _____ , the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant.

Subscribed and sworn to before me on this _____ day of _____, 2001.

_____     _____
Judge                                Officer Executing Search Warrant

1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27975          Date Executed: 3/28/02

Name: Palmieri          Location: 533 Stevens Ave. W #604
                                  Solana Beach, CA

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | 1 | 1 | 1 | 1 Unopened letter Vaya, As An Addressed to: Jamie De individual & C. Palmieri Enterprises, Inc. 3517 Camino Del Rio South, #400 San Diego, CA 92108, From the State of CA Dept. of Fair Employment & Housing. |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

CDI Investigator

1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27975          Date Executed: 3/28/02

Name: PALMIERI          Location: 533 STEVENS AVE. W. #6014
SOLANA BEACH, CA

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: 3/28/02          Signed:
Time: 4:50 P.M.          Agency/Badge #: SDCDA 68

The search warrant was issued on 3/28/02, by the Honorable H. Ronald Domnitz Judge of the Superior Court of the State of California, in and for the County of San Diego, 220 West Broadway, San Diego, California and filed under court number 27975.

For further information concerning this search warrant, contact MINERVA LOPEZ at (619) 525-4069.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

I, _____, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant.

Subscribed and sworn to before me on this _____ day of _____, 2001.

_____          Officer Executing Search Warrant
Judge

2

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27976          Date Executed: 3.28.02

Name: SIERRA FUNDING/          Location: 7350 PRINCESS VIEW, SAN DIEGO
          CJ PALMIERI

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|-----|------|------|------|-------------|
| | | | | NO ITEMS TAKEN |
| | | | | |
| | | | | |

1

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # _27976_      Date Executed: _3·28·02_

Name: _SIERRA FUNDING / C J PALMIERI_      Location: _7350 PRINCESS VIEW, SAN DIEGO_

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: _3/28/2002_      Signed: _[signature]_

Time: _1700_      Agency/Badge #: _DA 8341_

The search warrant was issued on _3/28/2002_, by the Honorable _STERLING_, Judge of the Superior Court of the State of California, in and for the County of San Diego, 220 West Broadway, San Diego, California and filed under court number _27976_.

For further information concerning this search warrant, contact _M. Lopez_ at _(619) 968-5166_.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

I, _Jose L. Green_, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant.

Subscribed and sworn to before me on this _28_ day of _MARCH_, 200_2_.

_____
Judge

_____
Officer Executing Search Warrant

2

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # 27977          Date Executed: 3-28-02

Name: CJ Palmeiri          Location: 2635 Camino del Rio South
San Diego 92108

| BOX# | ITEM# | ROOM | AREA | DESCRIPTION |
|---|---|---|---|---|
| 1 | | | | "1997 Funded Viaticals" docs |
| 2 | | | | "1999 NMF/SFG/CPEI Journal Sheets" |
| 3 | | | | "1999 Payroll & Bank Statements" |
| 4 | | | | CPEI 1996 Taxes & Bank records |
| 5 | | | | 1997 Viaticals Funded folders |
| 6 | | | | '97 NMF Viaticals Funded folders |
| 7 | | | | 98 & 99 Viatical Settlements Files |
| 8 | | | | '98 Viatical Files |
| 9 | | | | '98 Canceled Viaticals |
| 10 | | | | '97 CPEI Spreadsheets & checks |
| 11 | | | | '96 & Misc. Viaticals - Funded NMF |
| 12 | | | | '98 Tax, financial & misc files |
| 13 | | | | '96 Viatical files |
| 14 | | | | '96, '97 Tax & bookkeeping records |
| 15 | | | | '97 Viatical Files "Cancelled" |
| 16 | | | | '97 "Cancelled" Viatical Files |
| 17 | | | | '97 Bank statements & misc records |

1 of 2

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

San Diego Central District

RECEIPT AND INVENTORY

Search Warrant # *27977*  Date Executed: *3-28-02*

Name: *C J Palmeiri*  Location: *2635 Camino del Rio South San Diego CA 92108*

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and things seized by him this day in the search of the premises described in said warrant and taken pursuant thereto:

Date: *3-28-02*  Signed: _____

Time: *7:15 PM*  Agency/Badge #: *S.D.P.D #910*

The search warrant was issued on *3-28-02*, by the Honorable *H. Ronald Domnitz*, Judge of the Superior Court of the State of California, in and for the County of San Diego, 220 West Broadway, San Diego, California and filed under court number *27977*.

For further information concerning this search warrant, contact *Minerva Lopez* at *(619) 525-4069*.

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

I, *JOHN GREGORY*, the officer by whom this warrant was executed, do swear that the above inventory contains a true and detailed account of all property taken by me on the warrant.

Subscribed and sworn to before me on this *8* day of *APRIL*, 200*2*.

_____  _____

Judge  Officer Executing Search Warrant

DATE: *4-8-02*

Attest: A true copy,

STEPHEN THUNBERG, Court Administrator

By _____ Deputy

2

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
San Diego Central District

**RECEIPT AND INVENTORY**

Search Warrant # 27978                    Date Executed: 03-28-02

Name: C. PALMIERI ENTERPRISES, INC.    Location: 3517 Camino del Rio South # 203
San Diego, CA 92108

| BOX | ITEM# | ROOM | AREA | DESCRIPTION |
|-----|-------|------|------|-------------|
| 1 | 1 | 2 | A | Misc Papers plus copies |
| 1 | 2 | 2 | B | Deposit slips, rent receipts, Deposit info, Chart of Accounts |
| 1 | 3 | 2 | B | Rent Receipts, Misc Papers |
| 1 | 4 | 5 | B | Titan Management Agreement |
| 1 | 5 | 2 | C | Payment Reports, Bank Deposit Slip |
| 1 | 6 | 5 | B | C. Palmeiri documents |
| 1 | 7 | 5 | B | Sierra Properties |
| 1 | 8 | 5 | B | Income Statement |
| 1 | 9 | 5 | B | Income Statement |
| 1 | 10 | 5 | B | Sierra Properties |
| 2 | 11 | 3 | F | Titan Records |
| 2 | 12 | 5 | A | Income Statements |
| 2 | 13 | 5 | B | Income Statements |
| 3 | 14 | 3 | G | Bank Statements |
| 4 | 15 | 3 | A | CJ Palmeiri bills paid by Titan |
| 4 | 16 | 3 | C | Titan Income Statement |
| 4 | 17 | 3 | D | Titan Properties Managed |
| 4 | 18 | 4 | A | Loan info, Budget cash Flow Statement |
| 4 | 19 | 2 | C | 2001 General Ledger |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
### San Diego Central District

### RECEIPT AND INVENTORY

Search Warrant # 27978                    Date Executed:  03-28-02

Name:  C. PALMIERI ENTERPRISES, INC.     Location:  3517 Camino del Rio South # 203
                                                    San Diego, CA 92108

| BOX | ITEM | ROOM | AREA | DESCRIPTION |
|-----|------|------|------|-------------|
| 4 | 20 | 2 | C | 2001 Trail Balance & General Ledger |
| 5 | 21 | 5 | A | Misc Financial Documents, Property Info, Loan Info |
| 6 | 22 | 4 | B | 2000 Property Budget Binder, General Ledger, Periodic Review Report |
| 7 | 23 | 2 | D | Property Files |
| 8 | 24 | 2 | D | Property Files |
| 9 | 25 | 2 | D | Property files |
| 10 | 26 | 2 | D | Property Files |
| DF | 27 | 1 | PC | Duplicate Hard Drive |
| DF | 28 | 2 | PC | Duplicate Hard Drive |
| DF | 29 | 3 | PC | Duplicate Hard Drive |
| DF | 30 | 3 | PC | 9 Floppy Disks |
| DF | 31 | 4 | PC | Duplicate Hard Drive |
| DG | 32 | 3 | A | 9 ZIP DRIVES - LABELED TAM 2001 MONTH-END YEAR-END M7 |

Receipt is hereby acknowledged, and the undersigned makes this inventory, of the listed property and
things seized by him this day in the search of the premises described in said warrant and taken pursuant
thereto:
Date:  3/28/02                      Signed:_____
Time:  8:30                         Agency/Badge #:_____108_____

2

# EXHIBIT "B"

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, st. bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| JAMES K. OPENSHAW<br>1515 K Street, Suite 200<br>Sacramento, CA 95814 | | FILED<br>CIVIL BUSINESS OFFICE 8<br><br>MAR 22 AM 9:00<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |
| TELEPHONE NO.: (916) 322-6998    FAX NO.: (916) 445-6985 | | |
| ATTORNEY FOR (Name): Plaintiff People of the State of California | | |

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:
Superior Court of the State of California
County of San Diego

CASE NAME: People of the State of California v. C. Palmieri
Enterprises, Inc., et al.

| CIVIL CASE COVER SHEET<br>☐ Limited   ☒ Unlimited | Complex Case Designation<br>☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | CASE NUMBER: GIC 785226<br><br>ASSIGNED JUDGE: |
|---|---|---|

**Please complete all five (5) items below.**

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (e.g., discrimination, false arrest) (08)
- ☐ Defamation (e.g., slander, libel) (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (e.g., legal malpractice) (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)

- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (e.g., money owed, open book accounts) (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (e.g., quiet title) (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)

- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800 –1812 )**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Claims involving mass tort (40)
- ☒ Securities litigation (28)
- ☐ Toxic tort/Environmental (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (e.g., sister state, foreign, out-of-county abstracts) (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition (not specified above) (43)

2. This case ☒ is ☐ is not complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☒ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☒ Coordination and related actions pending in one or more courts in other counties, states or countries, or in a federal court
   c. ☒ Substantial amount of documentary evidence    f. ☐ Substantial post-disposition judicial disposition

3. Type of remedies sought (check all that apply):
   a. ☐ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive

4. Number of causes of action (specify): 4

5. This case ☐ is ☒ is not a class action suit.

Date: 3-21-02

JAMES K. OPENSHAW
    (TYPE OR PRINT NAME)

▶ _(signature)_
    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 982.2.)
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

ORIGINAL

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>982.2(b)(1) [Rev. January 1, 2000] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 982.2, 1800 –1812;<br>Standards of Judicial Administration, § 19 |
|---|---|---|---|

NO FEE GIC

FILED
CIVIL BUSINESS OFFICE B

'02 MAR 22 AM 9: 01

.......ERG
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

6013 01 07 GIC785226  03/22/02 09:42
02 001 New Civil   GOVERNMENT WAIVER

1   DEMETRIOS A. BOUTRIS (SBN 124161)
    California Corporations Commissioner
2   ALAN S. WEINGER (SBN 86717)
    Supervising Counsel
3   VIRGINIA JO DUNLAP (SBN 142221)
    Acting Supervising Counsel
4   JAMES K. OPENSHAW (SBN 137667)
    Corporations Counsel
5   1515 K Street, Suite 200
    Sacramento, California  95814
6   Telephone:  (916) 322-6998

7   Attorneys for the People of the State of California

8

9                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    FOR THE COUNTY OF SAN DIEGO

11   THE PEOPLE OF THE STATE OF          Case No.:   GIC  785226
     CALIFORNIA, by and through the
12   COMMISSIONER OF CORPORATIONS,

13          Plaintiff,                   COMPLAINT FOR TEMPORARY
                                         RESTRAINING ORDER; PRELIMINARY
14   vs.                                 INUNCTION:PERMANENT INJUNCTION:
                                         CIVIL PENALTIES; AND ANCILLARY
15   C. PALMIERI ENTERPRISES, INC., a    RELIEF
     Corporation; CARMEN J. PALMIERI,
16   individually and doing business as
     NATIONAL MEDICAL FUNDING, and       (Corporations Code §§ 25110. 25210.
17   TRUST MANAGEMENT SERVICES and       25401. 25541; Financial Code §§ 17000,
     SIERRA FUNDING GROUP; SIERRA        17200, et seq.)
18   FINDING GROUP, INC., a Corporation;
     INNOVATIVE FINANCIAL $ERVICES,      Pursuant to CCP 482.050, it is
19   INC., an Arizona corporation; ROBERT requested that Clerk of Court
     SHEARBURN; CC&K TRUST, by and       not make available to the Public,
20   through CARMEN J. PALMIERI, Trustee; the Records & Documents in the
     LAWRENCE C. REED; and DOES 1        attached action
21   through 100,
                                         _____
22          Defendants.                  Attorney For Plaintiff

23

24

25          Demetrios A. Boutris, Commissioner of Corporations for the State of California, acting

26   to protect the public from the unlawful and fraudulent sale of unqualified securities and

27   unlicensed activity by a natural persons involved in the securities and escrow businesses,

28   brings this action in the public interest in the name of the People of the State of California.

                                         ORIGINAL

                                    -1-

     COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INUNCTION;PERMANENT INJUNCTION;
                       CIVIL PENALTIES; AND ANCILLARY RELIEF

State of California - Department of Corporations

State of California - Department of Corporations

The People of the State of California allege as follows:

## VENUE AND JURISDICTION

1.    Plaintiff, by this action and pursuant to Corporations Code §25530 seeks to enjoin defendants:  1) from effecting transactions in securities in this state without having secured from the Corporations' Commissioner a certificate authorizing defendants to act in that capacity; 2) from offering and selling unqualified, nonexempt securities by means of misrepresentations of material facts; and 3) from performing escrow agent services in violation of the Financial Code sections 17000, *et seq.* ("Escrow Law").  Plaintiff also seeks civil penalties pursuant to Corporations Code §25535.

2.    Defendant Carmen J. Palmieri, and Does 1 through 10, inclusive, (hereafter collectively referred to as "Palmieri") are natural persons residing in the County of San Diego and at all times mentioned, were doing business as C. Palmieri Enterprises, Inc., and also under the fictitious names of National Medical Funding and Trust Management Services and Sierra Funding Group, all having a principal place of business in San Diego County.  Palmieri at all times mentioned herein has engaged in unlawful activity throughout the State of California and in other states, specifically including Arizona, while domiciled in the County of San Diego, State of California.  The transactions which involved violations of law hereinafter described were conducted in various counties in the State of California. Plaintiff is informed and believes, and thereon alleges, that Palmieri was the principal control person of activities involving all defendants which were intended to defraud investors with the offer and sale of viatical investments.

3.    Defendant C. Palmieri Enterprises, Inc., and Does 11 through 20, inclusive, (hereafter collectively referred to as "C. Palmieri Enterprises, Inc.") are, and at all times mentioned herein, were corporations licensed to conduct business in the State of California that have a principal place of business in San Diego County.  Plaintiff is informed and believes, and thereon alleges, that C. Palmieri Enterprises, Inc. was utilized by Palmieri to offer and sell unregistered securities in California and other states, including Arizona, and as an alter ego of Palmieri was used to defraud investors with sales of viatical investments.

-2-

State of California - Department of Corporations

1    4.    Defendant National Medical Funding and Does 21 through 30, inclusive,

2    (hereafter collectively referred to as "National Medical Funding") at all times mentioned

3    herein, were fictitious businesses which were an alter ego of and under the control of

4    Palmieri, and was utilized by Palmieri to offer and sell unregistered securities in California

5    and other states, specifically including Arizona.   Plaintiff is informed and believes, and

6    thereon alleges, that National Medical Funding was utilized by Palmieri to defraud investors

7    with sales of viatical investments.

8    5.    Defendant Trust Management Services and Does 31 through 40, inclusive,

9    (hereafter collectively referred to as "Trust Management Services") at all times mentioned

10   herein, were fictitious businesses  that were an alter ego of and under the control of

11   Palmieri, and were utilized by Palmieri to offer and sell unregistered securities in California

12   and other states, specifically including Arizona.   Plaintiff is informed and believes, and

13   thereon alleges, that National Medical Funding was utilized by Palmieri to defraud investors

14   with sales of viatical investments.   In addition, plaintiff alleges that Trust Management

15   Services was, in fact, an escrow company under the jurisdiction of Financial Code sections

16   17000, *et seq.* but was not licensed by the Department of Corporations for that purpose.

17   6.    Defendant Sierra Funding Group and Does 41 through 50, inclusive (hereafter

18   collectively referred to as "Sierra Funding Group"), at all times mentioned herein, were

19   fictitious businesses that were an alter ego of and under the control of Palmieri, and was

20   utilized by Palmieri to offer and sell unregistered securities in California and other states,

21   specifically including Arizona.  Plaintiff is informed and believes, and thereon alleges, that

22   National Medical Funding was utilized by Palmieri to defraud investors with sales of viatical

23   investments.

24   7.    Defendant Sierra Funding Group, Inc., and Does 51 through 60, inclusive,

25   (hereafter collectively referred to as "Sierra Funding Group, Inc.") at all times mentioned

26   herein, were corporations licensed to conduct business in California and had a principal

27   place of business in San Diego County.   Plaintiff is informed and believes, and thereon

28   alleges that Sierra Funding Group, Inc., is and was, in fact, an alter ego of and under the

-3-

COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INUNCTION;PERMANENT INJUNCTION;
CIVIL PENALTIES; AND ANCILLARY RELIEF

1  control of Palmieri, and was utilized by Palmieri to offer and sell unregistered securities in

2  California and other states, specifically including Arizona and was utilized by Palmieri to

3  defraud investors with sales of viatical investments.

4       8.    Defendant Robert Shearburn and Does 61 through 70, inclusive, (hereafter

5  collectively referred to as "Shearburn"), at all times mentioned herein, were natural persons

6  residing in Arizona or Nevada, whose principal place of business was alternatively in

7  Arizona or Nevada, and were, on information and belief, working with. Palmieri, and

8  engaged in the offer and sale of unregistered securities in California and other states,

9  specifically including Arizona.  Plaintiff is informed and believes, and thereon alleges, that

10  Shearburn, working in conjunction with Palmieri, was engaged in activities with the intent to

11  defraud investors with sales of viatical investments.

12       9.    Defendant Innovative Financial $ervices, Inc., and Does 71 through 80,

13  inclusive, (hereafter collectively referred to as "Innovative Financial $ervices, Inc.") are, and

14  at all times mentioned herein, were corporations licensed to conduct business in Arizona

15  and, were, in fact, an alter ego of and under the control of defendant Shearburn, and were

16  utilized by Shearburn and Palmieri to offer and sell unregistered securities in California and

17  other states, specifically including Arizona.  Plaintiff is informed and believes, and thereon

18  alleges, that Innovative Financial $ervices, Inc. was utilized by Palmieri and Shearburn to

19  defraud investors with sales of viatical investments.

20       10.    Defendant LAWRENCE C. REED and Does 81 to 90, inclusive (hereafter

21  collectively referred to as "Reed") at all times mentioned herein, were natural persons

22  residing in the County of San Diego, and were, upon information and belief, a principal or

23  officer or control person in Trust Management Services, and in that capacity, engaged in the

24  unlawful acts herein alleged along with Palmieri and Shearburn.

25       11.    Plaintiff is informed and believes, and thereon alleges, that defendant CC&K

26  Trust, by and through Carmen J. Palmieri, Trustee, and Does 91 through 100, inclusive

27  (hereafter collectively referred to as "CC&K Trust"), at all times mentioned herein, was a real

28  estate trust owned, managed, and controlled by Carmen J. Palmieri and his spouse,

*State of California - Department of Corporations*

-4-

State of California - Department of Corporations

1  Constance Palmieri, and was the mechanism utilized by Carmen J. Palmieri for purchasing
2  real properties with money obtained from investors in the viatical businesses, National
3  Medical Funding and Trust Management Services.

**DEFENDANTS**

5      12.   At all relevant times hereto, Palmieri, individually and doing business as C.
6  Palmieri Enterprises, Inc., National Medical Funding, Trust Management Services, Sierra
7  Funding Group and Reed, engaged in the unlicensed business of effecting transactions in
8  unqualified, nonexempt securities in this state by means of misrepresentations of material
9  facts.  While unlawfully engaged, Palmieri, individually and doing business as C. Palmieri
10  Enterprises, Inc., National Medical Funding, Trust Management Services, Sierra Funding
11  Group and. Reed, sold more than $3 million in unlawful securities in the form of viatical
12  investments.

13      13.   At all relevant times hereto, Shearburn, individually and doing business as
14  Innovative Financial $ervices, Inc., engaged in the unlicensed business of effecting
15  transactions in unqualified, nonexempt securities in this state by means of
16  misrepresentations of material facts.  Plaintiff is informed and believes, and thereon alleges
17  that, while unlawfully engaged, Shearburn, individually and doing business as Innovative
18  Financial $ervices, Inc., sold more than $3 million in unlawful securities to investors, for
19  which he charged and received commissions from Palmieri, C. Palmieri Enterprises, Inc.,
20  National Medical Funding, and/or Trust Management Services.

21      14.   At all relevant times hereto, Innovative Financial $ervices, Inc established by
22  defendant Shearburn was engaged in the unlicensed business of effecting transactions in
23  unqualified, nonexempt securities in this state by means of misrepresentations of material
24  facts.  While unlawfully engaged, Innovative Financial $ervices, Inc. received commissions
25  on all sales made by defendant National Medical Funding in the State of California.

26      15.   Defendants sued herein under the fictitious names Does 1 through 100,
27  inclusive, are unknown to plaintiff who therefore sues such defendants by such fictitious
28  names.  Plaintiff will amend this complaint to show the true name of each such defendant

-5-

1    when the same has been ascertained.   Plaintiff is informed and believes, and thereon

2    alleges, that all defendants, including the Doe defendants, were at all times mentioned,

3    principals, agents, employers, employees, co-venturers, or co-conspirators, and were acting

4    in their respective capacities in doing the acts complained of, thereby imputing liability to

5    each other.

6         16.    Plaintiff alleges upon information and belief that at all times mentioned herein,

7    all defendants, Palmieri, C. Palmieri Enterprises, Inc., National Medical Funding, Trust

8    Management Services, Sierra Funding Group, Sierra Funding Group, Inc., Shearburn,

9    Innovative Financial $ervices, Inc. and Reed, were each alter egos of the other, being

10   concurrently engaged and cooperating with each other in the offer and sale of unregistered,

11   nonexempt securities in the State of California, namely viatical settlement investments, to

12   investors in California and Arizona and, upon belief, other states as well, based on

13   misrepresentations of material facts and with the intent to defraud investors.   As a result,

14   each defendant should be held jointly and severally liable for the acts and omissions,

15   misrepresentations and fraud, of all other defendants.

**FIRST CAUSE OF ACTION**

16

17   UNLICENSED BROKER-DEALER ACTIVITY
     (Corporations Code §25210)
18   AS AGAINST ALL DEFENDANTS, EXCEPT CC&K

19        17.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through

20   16, inclusive, as though set forth at length herein.

21        18.    Corporations Code § 25210(a) sets forth the securities broker-dealer licensure

22   requirement as follows:

23        Unless exempted under the provisions of Chapter 1 (commencing with Section
          25200) of this part, no broker-dealer shall effect any transaction in, or induce
24        or attempt to induce the purchase or sale of; any security in this state unless
          the broker-dealer has first applied for and secured from the commissioner a
25        certificate, then in effect, authorizing that person to act in that capacity.

26   Corporations Code §25535 states:

27        (a)  Any person who violates any provision of this law, or who violates any
          rule or order under this law, shall be liable for a civil penalty not to exceed
28        twenty-five thousand dollars ($25,000) for each violation, which shall be
          assessed and recovered in a civil action brought in the name of the people of

-6-

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INUNCTION;PERMANENT INJUNCTION;
CIVIL PENALTIES; AND ANCILLARY RELIEF**

State of California - Department of Corporations

State of California - Department of Corporations

1   the State of California by the commissioner in any court of competent
2   jurisdiction.

3       19.    Defendants Palmieri, C. Palmieri Enterprises, Inc., National Medical Funding,
4   Trust Management Services, Sierra Funding Group, Sierra Funding Group, Inc., Shearburn,
5   Innovative Financial $ervices, Inc. and Reed, and all Doe defendants, are not licensed to
6   offer or sell securities by the Corporations Commissioner or any other similar licensing
7   entity.   Beginning at an exact date unknown to plaintiff, but at least since December 27,
8   1999, and continuing until at least July 3, 2001, defendants, and each of them, unlawfully
9   engaged in the business of effecting transactions in the State of California by acting in such
10  capacity without securing from the Corporations Commissioner or any similar licensing
11  entity an authorizing broker-dealer certificate.  Defendants' unlawful acts include, but are not
12  limited to, engaging in a course of business of offering and selling unregistered and
13  nonexempt securities in the form of viatical investments from within the state to more than
14  20 people, most residents of Arizona.   Most viaticals were issued by defendant National
15  Medical Funding, a company owned and operated by Palmieri.   Purchases by each of these
16  investors ranged from ten thousand dollars ($10,000) to nearly seven hundred thousand
17  dollars ($700,000) and total approximately three million dollars ($3,000,000) documented to
18  date.   Plaintiff is informed and believes, and thereon alleges, that the total investors and
19  dollars invested will ultimately be significantly more than currently documented.

20      20.    Defendant National Medical Funding was, at all times mentioned, a fictitious
21  business name and alter ego for Carmen J. Palmieri and C. Palmieri Enterprises, Inc.
22  National Medical Funding was the issuer of viatical settlement investments which, upon
23  information and belief, was to purchase viatical settlements from viators with investor funds.
24  Investors were told that their money was to be used for the purchase of insurance policies
25  from dying people.   Plaintiff is informed and believes, and thereon alleges, that the money
26  was not used to purchase insurance policies, but was, in fact, used by Palmieri and C.
27  Palmieri Enterprises, Inc. to purchase personal and real property in the name of Palmieri, or

28

-7-

1   companies or real estate trusts Palmieri owned or controlled, including, but not limited to,

2   CC&K Trust.

3       21.    Defendants' pattern of conduct, as set forth above, demonstrates the

4   necessity for granting permanent injunctive and ancillary relief restraining such and similar

5   acts in violation of §25210, and providing restitution or disgorgement to investors, as well as

6   imposition of appropriate civil penalties.

7       WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as

8   set forth below.

9   **SECOND CAUSE OF ACTION**

10  UNLAWFUL OFFER AND SALE OF UNQUALIFIED, NONEXEMPT SECURITIES
    (Corporations Code §25110)

11  AS AGAINST ALL DEFENDANTS, EXCEPT CC&K

12      22.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through

13  21, inclusive, as though set forth at length herein.

14      23.    Corporations Code §25110 makes it unlawful to offer or sell nonexempt,

15  unqualified securities. That section states:

16      It is unlawful for any person to offer or sell in this state any security in an
    issuer transaction (other than in a transaction subject to Section 25120),
17  whether or not by or through underwriters, unless such sale has been qualified
    under Section 25111, 25112 or 25113 (and no order under Section 25140 or
18  subdivision (a) of Section 25143 is in effect with respect to such qualification)
    or unless such security or transaction is exempted or not subject to
19  qualification under Chapter 1 (commencing with Section 25100) of this part.

20  Corporations Code §25535 states:

21      (a)  Any person who violates any provision of this law, or who violates any
    rule or order under this law, shall be liable for a civil penalty not to exceed
22  twenty-five thousand dollars ($25,000) for each violation, which shall be
    assessed and recovered in a civil action brought in the name of the people of
23  the State of California by the commissioner in any court of competent
    jurisdiction.

24      24.    Beginning at an exact date that is unknown to plaintiff; but at least since

25  December 27, 1999, and continuing until at least July 3, 2001, Palmieri, C. Palmieri

26  Enterprises, Inc., National Medical Funding, Trust Management Services, Sierra Funding

27  Group, Sierra Funding Group, Inc., Shearburn, Innovative Financial $ervices, Inc. and Reed

28  unlawfully offered and sold to more than 20 residents of the State of Arizona and California

State of California - Department of Corporations

-8-

State of California - Department of Corporations

1  unqualified, nonexempt securities in the form of viatical investments issued by National

2  Medical Funding amounting to more than $3,000,000 in investment money.   The

3  investments were to be repaid by National Medical Funding upon "maturity" or the death of

4  the viator, in addition to a pre-negotiated interest.  Most investors were told, however, that

5  their investment would be repaid within 12-18 months based on life expectancy evaluations

6  by National Medical Funding.  To date, none of the investors have received a return of any

7  principal from National Medical Funding.  In addition, many investors were told that they

8  would be paid within 30 days after the investment had "matured," meaning the viator died,

9  and in spite of being informed of the maturity of the investment, no money has been repaid.

10      25.   Defendants' pattern of conduct, as set forth above, demonstrates the

11  necessity for granting injunctive and ancillary relief restraining such and similar acts in

12  violation of §25110, and providing restitution or disgorgement to investors, as well as

13  imposition of appropriate civil penalties.

14      WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as

15  set forth below.

16                    **THIRD CAUSE OF ACTION**

17         UNLAWFUL OFFER AND SALE OF SECURITIES BY MEANS OF
           UNTRUE STATEMENTS OR OMISSIONS OF MATERIAL FACT
18                     (Corporations Code §25401)
                 AS AGAINST ALL DEFENDANTS, EXCEPT CC&K

19

20      26.   Plaintiff realleges and incorporates herein by reference paragraphs 1 through

21  25, inclusive, as though set forth at length herein.

22      27.   Corporations Code §25401 makes it unlawful to offer or sell securities by

23  means of untrue statements or omissions of material fact. This section states:

24      It is unlawful for any person to offer or sell a security in this state or buy or
        offer to buy a security in this state by means of any written or oral
        communication which includes an untrue statement of a material fact or omits
25      to state a material fact necessary in order to make the statements made, in the
        light of the circumstances under which they were made, not misleading.

26

27      28.   Beginning at an exact date that is unknown to plaintiff, but at least since

28  December 27, 1999, and continuing until at least July 3, 2001, defendants Palmieri, C.

-9-

State of California - Department of Corporations

1  Palmieri Enterprises, Inc., National Medical Funding, Trust Management Services, Sierra

2  Funding Group, Sierra Funding Group, Inc., Shearburn, Innovative Financial $ervices, Inc.

3  and REED, offered and sold to California's investing public securities in the form of viatical

4  settlement contracts issued by National Medical Funding by means of untrue statements of

5  material fact and omissions of material facts. Palmieri, Shearburn and Reed engaged in this

6  course of business under the fictitious business name of National Medical Funding and/or

7  C. Palmieri Enterprises, Inc., both owned and controlled by Palmieri.

8      29.    Palmieri, C. Palmieri Enterprises, Inc., National Medical Funding, Trust

9  Management Services, Sierra Funding Group, Sierra Funding Group, Inc., Shearburn,

10  Innovative Financial $ervices, Inc. and Reed offered and sold the viatical settlement

11  contracts by representing to these prospective investors that they had professional skill and

12  work experience relating to investments and management of personal finances. Palmieri,

13  Shearburn and Reed, further recommended to these prospective investors that they

14  purchase the viatical settlement contracts issued by National Medical Funding, a company

15  owned and controlled.

16      30.    Palmieri and Shearburn, the agent for Palmieri and National Medical Funding,

17  represented to prospective investors that National Medical Funding would use the

18  investment proceeds to purchase beneficiary interests in insurance policies of dying people.

19  Defendants, specifically including Palmieri and Shearburn, made misrepresentations of

20  material facts, including, but not limited to the following:

21          a.    The investment was safe and low risk.  In fact, the investment was not

22  safe and low risk. Insurance company may not ultimately pay the proceeds, because of

23  improper assignment of the benefits, fraud in procurement of the policy or supporting

24  medical evaluations, and failure to continue paying the policy premiums.

25          b.    The investment will provide higher than stock market or money market

26  returns, from 14% up to 48.15% returns.  In fact, the actual rate of return is ultimately

27  dependent on the life of the viator.  The longer the viator lives, the less the rate of return

28  becomes.

-10-

State of California - Department of Corporations

c.     The investment is "completely insured". In fact, there was no separate insurance policy guaranteeing the investment proceeds should the insurance company not ultimately pay the proceeds because of such events as improper assignment of the benefits, fraud in procurement of the policy or supporting medical evaluations or failure to continue paying the policy premiums.

d.     The investment is "backed by a State Guarantee Insurance Fund." In fact, the State Guarantee Insurance Fund is only available if the insurance company issuing the policy goes out of business but does not cover events such as improper assignment of the benefits, fraud in procurement of the policy or supporting medical evaluations or failure to continue paying the policy premiums.

e.     The "dollars and yield" are "secured" by a separate insurance policy with an "A" or better rated insurance company, In fact, there was no additional "insurance policy" guaranteeing the principal or interest.

f.     The investment is backed by a "separate fidelity bond." In fact, no bond was obtained.

g.     The investment is "completely liquid," "100% liquid with no fees or surrender charges." In fact, the investment is not liquid at all, but the money invested is unavailable during the lifetime of the viator.

h.     Principal and profit would be returned "10 to 30 days after maturity." In fact, none of the investors have received a return of principal or interest, and some have been informed by defendants that the investment had "matured," i.e. the viator died.

i.     There is "zero market risk." In fact, the investment is risky because it relies solely on the activities of defendants, namely Palmieri and National Medical Funding.

j.     Participation funds are deposited with "an independent bonded trust/escrow agent." In fact, the "trust/escrow agent" was Trust Management Services, an unlicensed escrow "shell" company and fictitious business name and alter ego of Palmieri and C. Palmieri Enterprises, Inc. Although investors were told the business address of Trust Management Services was in San Francisco, California, the "address" was nothing

-11-

1  more than a mail drop box and a San Francisco telephone number that was answered in the

2  Palmieri offices in San Diego.

3          k.      Investment funds become a "guaranteed receivable of principal and

4  profit combined" of the trust.  In fact, Trust Management Services was nothing more than an

5  alter ego company controlled by Palmieri.

6      31.     Defendants, and each of them, made the above misrepresentations of fact to

7  the investors with full knowledge of the truth, as indicated in Paragraph 30.  To date, none

8  of the investors have received a return of their principal or interest, as promised.  In addition,

9  although several investors were told months or years ago that their investment had

10  "matured" i.e. the viator had died, they have received no payments as was promised when

11  they purchased the security.

12      32.     Defendants' pattern of conduct, as set forth above, demonstrates the

13  necessity for granting injunctive and ancillary relief restraining such and similar acts in

14  violation of §25401, and providing restitution or disgorgement to investors, as well as

15  imposition of appropriate civil penalties.

16      33.     Corporations Code §25535 states:

17      (a)  Any person who violates any provision of this law, or who violates any
         rule or order under this law, shall be liable for a civil penalty not to exceed
18      twenty-five thousand dollars ($25,000) for each violation, which shall be
         assessed and recovered in a civil action brought in the name of the people of
19      the State of California by the commissioner in any court of competent
         jurisdiction.
20
21      34.     Defendants, and each of them, have violated the securities laws in the State of

22  California, as alleged in the First, Second and Third Causes of Action, alleged above.  As a

23  result, defendants' pattern of conduct, as set forth above, demonstrates the necessity for

24  granting permanent injunctive and ancillary relief restraining such and similar acts in

25  violation of §25210, and providing restitution or disgorgement to investors, as well as

26  imposition of appropriate civil penalties.

27      WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as

28  set forth below.

State of California - Department of Corporations

-12-

**FOURTH CAUSE OF ACTION**

UNLICENSED ESCROW AGENT ACTIVITY
(Financial Code §17000, *et seq.*)
AS AGAINST CARMEN J. PALMIERI
AND/OR C. PALMIERI ENTERPRISES, INC.,
DOING BUSINESS AS TRUST MANAGEMENT SERVICES

35.    Plaintiff realleges and incorporates herein by reference paragraphs 1 through 33, inclusive, as though set forth at length herein.

36.    Financial Code § 17200 sets forth the escrow agent licensure requirement as follows:

> It shall be unlawful for any person to engage in business as an escrow agent within the State except by means of a corporation duly organized for that purpose licensed by the commissioner as an escrow agent.

37.    Beginning at an exact date that is unknown to plaintiff, but ongoing and continuing until the date of this Complaint, Palmieri and C. Palmieri Enterprises, Inc., were each an owner and controller of Trust Management Services a fictitious business name for these defendants and an alter ego of Palmieri and C. Palmieri Enterprises, Inc.   Trust Management Services was listed on business documents as located in San Francisco when, in fact, it was operated from the Palmieri offices in San Diego.   Trust Management Services unlawfully engaged in the business of effecting escrow transactions as an escrow agent in the State of California by acting in such capacity without conducting operations as a duly-licensed corporation, without securing from the Corporations Commissioner a license authorizing such escrow agent activity and without complying with the licensing provisions of the Escrow Law, including, but not limited to, Financial Code §17202 (bonding) and §17210 (net worth).   None of the defendants is exempt from the requirements of the Escrow Law as it relates to the activities complained of herein.

38.    Defendants' unlawful acts include, but are not limited to, performing escrow agent services for private individuals and companies, namely receiving money from investors in viatical settlement contracts and allegedly holding documentation relating to the viatical investments and processing payments to the investors upon maturity of the investment, for which Trust Management Services (Palmieri) obtained a fee for the unlawful

-13-

State of California - Department of Corporations

1    escrow services performed.  Defendants, and each of them, have operated in this capacity

2    for many years, handling hundreds of transactions, without obtaining the required license.

3         39.     Plaintiff is informed and believes, and on that basis alleges, that unless

4    enjoined by the Court, defendants will continue to perform escrow agent services indefinitely

5    into the future, without obtaining the required license and without complying with the

6    provisions of the Escrow Law, which was enacted in the interests of protecting members of

7    the public who may require the services of an escrow agent or escrow company.

8         40.     Financial Code §17607 permits the Commissioner to bring this action in the

9    name of the people of the State of California to "enjoin the acts or practices or to enforce

10    compliance with this law or any rule or order hereunder . . . ."  Remedies may include

11    injunctive and equitable relief and "ancillary relief may be granted as appropriate."

12         41.     Financial Code §17701 states:

13
14          Any person who violates any provision of this division, or who violates any rule or order under this division, shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation . . . .

15         42.     Defendants' pattern of conduct, as set forth above, demonstrates the

16    necessity for granting injunctive and ancillary relief restraining such and similar acts in

17    violation of the Escrow Law, and imposing the maximum penalty allowed by law.

18         WHEREFORE, Plaintiff prays for judgment against defendants, and each of them, as

19    set follows:

20    **AS AGAINST ALL DEFENDANTS:**

21         1.     For a temporary restraining order and order of preliminary injunction

22    restraining and enjoining all Defendants, their officers, directors, successors in interest,

23    agents, employees, attorneys in fact, and all persons acting in concert or participating with

24    them, or any of them, except the Receiver in the lawful exercise of his duties under the

25    receivership, from directly or indirectly:

26         a.     Violating Corporations Code Section 25210 by effecting transactions in,

27    attempting to induce or attempt to induce the purchase or sale of any security without

28    having obtained a license as a broker-dealer from the Commissioner of Corporations;

State of California - Department of Corporations

1         b.      Violating Corporations Code Section 25110 by offering or selling or

2  buying or offering to buy viatical settlements, investment contracts or any other securities

3  without that security being qualified pursuant to the Corporate Securities Law of 1968, or

4  unless exempt;

5         c.      Violating Corporations Code Section 25401 by offering or selling or

6  buying or offering to buy viatical settlements, investment contracts or any other securities by

7  means of any written or oral communication which includes an untrue statement of a

8  material fact or omits to state a material fact necessary in order to make the statements

9  made, in light of the circumstances under which they were made, not misleading.

10        d.      Violating Financial Code sections 17000, *et seq.* by performing escrow

11 agent services and operating an unlicensed escrow company without first obtaining a

12 license for that purpose from the California Corporations Commissioner.

13        e.      Removing, destroying, mutilating, concealing, altering, transferring, or

14 otherwise disposing of, in any manner, any books, records, documents, correspondence,

15 brochures, manuals, or other documentation of any kind in the possession, custody or

16 control of any of the Defendants.

17        f.      Transferring, changing, disbursing, selling, dissipating, converting,

18 pledging, assigning, foreclosing or otherwise disposing of any real or personal property or

19 other assets, in their possession or under their control, or in the possession of, or under the

20 control of, any of them, which property or other assets are or were to be held for the benefit

21 of defendants' investors and/or creditors, or by any person for the benefit of any investors

22 and/or creditors of defendants, and each of them, whether in trust or otherwise.

23        g.      Withdrawing from any bank account, transferring, changing, disbursing,

24 selling, dissipating, converting, pledging, assigning, foreclosing, or otherwise disposing of

25 any real property or personal property in their possession or under their control, or in the

26 possession of, or under the control of, any of the Defendants, which property or other assets

27 were derived or emanated from directly, or indirectly, the sale or purchase or offer to sell or

28

-15-

1  purchase viatical settlements or any other security under California law, investment
2  contracts or other securities.

3      2.     For an Order that, pursuant to section 25535 of the Corporations Code
4  Defendants, and each of them, individually, jointly and severally, pay to the Department of
5  Corporations, a civil penalty in the maximum sum of $25,000 (Twenty-five Thousand
6  Dollars) for each act in violation of Corporations Code Section 25110, and a maximum of
7  $25,000 (Twenty-five Thousand Dollars) for each act in violation of Corporations Code
8  Section 25401, as authorized by Corporations Code Section 25535.

9      3.     For an Order that Defendants, Palmieri, C. Palmieri Enterprises, Inc., Palmieri
10 doing business as Trust Management Services, National Medical Funding and Palmieri
11 doing business as National Medical Funding, and each of them, individually, jointly and
12 severally, pay to the Department of Corporations, a civil penalty in the maximum sum of
13 $2,500 (Two Thousand Five Hundred Dollars) for each act in violation of Financial Code
14 Section 17000, et seq., as authorized by Financial Code Section 17602.

15     4.      That pursuant to section 25530(b) of the Corporations Code defendants, and
16 each of them, be ordered to disgorge all profits and compensation obtained as a result of
17 the violations of law complained of herein, all in the amounts and manner provided for by
18 law.

19 **AS AGAINST DEFENDANTS CARMEN J. PALMIERI, C. PALMIERI ENTERPRISES,**
20 **INC., TRUST MANAGEMENT SERVICES, NATIONAL MEDICAL FUNDING, CC&K**
21 **TRUST:**

22     1.      For a Temporary Restraining Order and Permanent Injunction placing an
23 immediate freeze on all funds, negotiable instruments and/or assets held in any bank or
24 other accounts, certificates of deposit or otherwise, without limitation, in the name of or for
25 the benefit of defendants Palmieri, C. Palmieri Enterprises, Inc., Trust Management
26 Services, National Medical Funding, CC&K Trust directly or indirectly, and each of them.

27     2.      For an Order Appointing a Receiver ex parte, without notice, during the
28 pendency of this action or until further order of the court, to take possession of all real and

State of California - Department of Corporations

-16-

COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INUNCTION;PERMANENT INJUNCTION;
CIVIL PENALTIES; AND ANCILLARY RELIEF

State of California - Department of Corporations

1   personal property and assets of defendants Palmieri, C. Palmieri Enterprises, Inc., National

2   Medical Funding Trust Management Services and CC&K Trust, whether directly or indirectly

3   owned, beneficially or otherwise by, or in the possession, custody or control of defendants,

4   and each of them, and such Does as may be subsequently named (hereinafter "receivership

5   defendants"), and their respective subsidiaries and affiliates, and their successors and

6   assigns wherever situated, or to which receivership defendants have any right of

7   possession, custody or control, beneficially or otherwise, irrespective of whosoever holds

8   such assets, including all such assets which receivership defendants carry or maintain, or

9   which may be received during the pendency of this receivership, in order to obtain an

10   adequate accounting of receivership defendants' assets and liabilities and to secure a

11   marshalling of said assets; and

12          FOR SAID ORDER TO FURTHER PROVIDE THAT:

13          A.     The receiver, prior to entry of his duties, shall take an oath to support the

14   constitutions of the United States and the State of California and shall be bonded according

15   to law.

16          B.     The receiver shall be authorized, empowered and directed:

17                 1.     To marshal, collect, review, observe, discover and take charge of all the

18   real and personal property, premises and other assets of, or in the possession of or under

19   the control of receivership defendants, beneficially or otherwise, or wherever else situated,

20   all accounts of receivership defendants in financial depository or other institutions, and of

21   any other property in which receivership defendants have an interest, regardless by whom it

22   may be held, beneficially or otherwise, on an ongoing and continual basis pursuant to this

23   court's order.  The receiver shall report to this Court the results of the review, observation,

24   discovery and abstracts resulting from the activities of the receiver as ordered by this Court,

25   and specifically on any commingling of funds, unauthorized loans or other disposition of

26   property of whatever description between any and each of the receivership defendants

27   herein and/or any person, corporation, entity, sole proprietorship, affiliate, association of

28

-17-

State of California - Department of Corporations

1  whatever type or structure, whether or not said entities are or are not defendants in this

2  action;

3        2.    To employ attorneys to assist the receiver in the performance of his

4  duties and responsibilities, such employment to be approved by the Court upon ex parte

5  application of the receiver;

6        3.    To employ other such persons, including accountants, investigators,

7  clerical and professional personnel, and the receiver's in-house staff and counsel, to

8  perform such tasks as may be necessary to aid the receiver in the performance of his duties

9  and responsibilities, without further order of the court;

10        4.    To file, within 30 days of his qualification and appointment hereunder,

11  an initial inventory of all property which he shall then have reviewed, observed and/or

12  discovered pursuant to this Court's order.  Additionally, the receiver is to file one or more

13  supplemental inventories when and if he shall subsequently come into knowledge of

14  additional items appropriate to the inventory;

15        5.    To undertake an independent review into the affairs and transactions of

16  receivership defendants and to file with this Court, within 120 days, and every six months

17  thereafter, a report detailing the receiver's findings of his review of the condition of

18  receivership defendants, other affairs and transactions of receivership defendants, reflecting

19  the existence of any liabilities, both those claimed by others to exist and those to which the

20  receiver believes to be the legal obligations of each of said receivership defendants,

21  including a review of any possible conflicts of interest and any further information the

22  receiver believes may assist in an equitable disposition of this matter, and to include in the

23  report the receiver's opinion regarding the ability of said receivership defendants to meet

24  their obligations as they come due, and the receiver's recommendation regarding the

25  necessity for, and the best method of handling, preserving, or disposing of said assets;

26        6.    To invest funds of the receivership estate in any interest-bearing

27  obligations of the United States or in any interest-bearing accounts in financial institutions

28  approved by the United States Trustee as an authorized depository for funds of bankruptcy

1   estate, without further order of the Court; and to be the signatory on all bank accounts of

2   receivership defendants, and each of them;

3          7.     To bring such proceedings as are necessary to enforce the provisions

4   hereof, including issuance of subpoenas to compel testimony or production of documents as

5   to the existence or location of assets or any other information pertinent to the business,

6   financial affairs, and other transactions of receivership defendants;

7          8.     To bring such proceedings as are necessary to modify the provisions

8   hereof, as the receiver deems appropriate;

9          9.     To make such payments and disbursements from the funds so taken

10  into custody, control and possession of the receiver or otherwise received by him, as may

11  be necessary and advisable in discharging his duties as receiver, without further order of

12  the court, including, without limitation, the payment of interim compensation to the receiver

13  and persons or entities under (b) and (c) above, subject to the provisions of paragraph 11;

14        10.    To carry on any lawful business activity of the entities and persons or

15  entities in receivership, to preserve investors' assets and to foreclose and/or actively seek

16  and negotiate with potential buyers, assignees or other parties who may be interested in

17  acquiring, purchasing, leasing, subleasing or renting real or personal property of defendants

18  and to sell, lease, sublease or rent such real or personal property of defendants, subject to

19  court approval;

20        11.    To institute, prosecute, defend, compromise, intervene in and become a

21  party, either in his own name or in the name of defendants, to such suits, actions or

22  proceedings as may be necessary for the protection, maintenance, recoupment or

23  preservation of the assets or property of receivership defendants, or in his custody, in his

24  discretion, without further order of the Court; and

25        12.    To divert, take possession of and secure all mail of receivership

26  defendants, in order to screen such mail, retaining so much as relates to the business of

27  receivership defendants, and forwarding to the individual or other appropriate addresses so

28  much as is not, in the receiver's opinion, appropriate for retention by him, and to effect a

State of California - Department of Corporations

-19-

State of California - Department of Corporations

1  change in the rights to use any and all post office boxes and other mail collection facilities
2  used by receivership defendants; and

3        13.    Upon the receiver's appointment, the receiver shall undertake an
4  immediate review of all readily available assets of the receivership defendants in order to
5  determine the economic viability of a receivership.  Upon such review, if the receiver
6  determines that sufficient assets are readily available to fund the receivership, then the
7  receiver shall file such finding with the Court, and the receivership shall continue until further
8  order of the Court. If upon initial review the receiver determines that readily available assets
9  are insufficient to maintain the receivership, then the receiver shall so notify the Court, and
10  may request that the Court dissolve the receivership, or modify the duties and
11  responsibilities of the receiver, and Plaintiff will not oppose such request, it being
12  understood that the receiver and professionals employed by the receiver shall not be
13  expected to perform services unless readily available assets exist to pay the expenses of
14  the receivership.

15        14.    The receiver shall cooperate fully with the California Department of
16  Corporations, and any other state and federal law enforcement and regulatory agencies
17  having jurisdiction over matters relating to the conduct or business of defendants so as not
18  to impair the ability of said state and federal law enforcement regulatory agencies to perform
19  their duly authorized investigative and enforcement duties.

20        15.    The receiver's powers shall be in addition to, and not by way of
21  limitation of, the powers described in Corporations Code Section 29540 and 25530(a),
22  Financial Code Section 22713, and Government Code Section 13975.1 and Code of Civil
23  Procedure Sections 564, et seq.

24        16.    The receiver shall be vested with, and is authorized, directed and
25  empowered to exercise, all of the power of receivership defendants, their officers, directors,
26  shareholders, general partners or persons who exercise similar powers and perform similar
27  duties; and that receivership defendants, their officers, agents, employees, representatives,
28  directors, successors in interest, attorneys in fact and all persons acting in concert or

-20-

1   participating with them, are hereby divested of, restrained and barred from exercising any of

2   the powers vested herein in the receiver.

3       17.    Any state or federal law enforcement or regulatory agency having

4   jurisdiction over matters relating to defendants' business shall be permitted to review,

5   without exception, all reports of the receiver and all books, records, and files of defendants

6   at any time during normal business hours, with reasonable notice, and to make any

7   abstracts or copies of said documents as it desires, provided that nothing herein shall waive

8   or abrogate any applicable attorney-client or other legally recognized privilege; and

9       18.    Defendants, including, but not limited to the receivership defendants,

10   their officers, directors, shareholders, agents, servants, employees, attorneys,

11   salespersons, successors, assigns, subsidiaries, affiliates, and other persons or entities

12   under their control and all persons or entities in active concert or participation with

13   defendants, and all persons owing a duty of disclosure to defendants, and each of them,

14   shall cooperate with the receiver in his investigation and turn over to the receiver records,

15   documentation, charts and/or descriptive material of all funds, assets, property owned

16   beneficially or otherwise, and all other assets of receivership defendants wherever situated,

17   and all books and records of accounts, title documents and other documents in the

18   possession or under their control, which relate, directly or indirectly, to assets of

19   receivership defendants; and

20       19.    Except by leave of this Court and during the pendency of this

21   receivership, all claimants, creditors and other persons seeking relief of any kind, in law or in

22   equity, from receivership defendants, and all others acting on behalf of any such persons,

23   including sheriffs, marshals, servants, agents and employees, are restrained from:

24       a.    Commencing, prosecuting, continuing or enforcing any suit or

25   proceeding, except by motion before this court;

26       b.    Executing or issuing or causing the execution or issuance of any

27   court attachment, subpoena, replevin, execution or other process for the purpose of

28   impounding or taking possession of or interfering with or creating or enforcing a lien upon

State of California - Department of Corporations

-21-

State of California - Department of Corporations

1  any property owned or in the possession of receivership defendants, its subsidiaries or

2  affiliates, or the receiver appointed therein, wherever situated;

3         c.     Commencing or continuing judicial or non-judicial foreclosure

4  proceedings or proceedings for the appointment of a receiver for any property owned or

5  claimed by receivership defendants in this action;

6         d.     Creating, perfecting, or enforcing any lien or encumbrance

7  against any real or personal property;

8         e.     Accelerating the due date of any obligation or claimed obligation;

9         f.     Exercising any right of set-off;

10         g.     Taking, retaining, retaking or attempting to retake possession of

11  any real or personal property;

12         h.     Withholding or diverting any rent or other obligation; and

13         i.     Doing any act or thing whatsoever to interfere with the

14  possession of or management by the receiver herein and of the property and assets owned,

15  controlled or in the possession of receivership defendants or to, in any way, interfere with

16  the receiver or to interfere in any manner during the pendency of this proceeding with the

17  exclusive jurisdiction of this Court over defendants.

18         j.     Any and all provisions of any agreement entered into by and

19  between any third party and receivership defendants, including, by way of illustration, but

20  not limited to, the following types of agreements (as well as any amendments or

21  modifications thereto), mortgages, partnership agreements, financial guarantee bonds, joint

22  venture agreements, promissory notes, remarketing agreements, loan agreements, security

23  agreements, indemnification agreements, subrogation agreements, subordination

24  agreements, deeds of trust, pledge agreements, assignments of rents and other collateral,

25  financing statements, letters of credit, leases, insurance policies, guarantees, escrow

26  agreements, management agreements, real estate brokerage and rental agreements,

27  servicing agreements, consulting agreements, easement agreements, license agreements,

28  franchise agreements, construction contracts, or employment contracts that provide in any

manner that the selection, appointment, or retention of a receiver or trustee by any court, or the entry of an order such as hereby made, shall be deemed to be, or otherwise operate as a breach, violation, event of default, termination, event of dissolution, event of acceleration, insolvency, bankruptcy, or liquidation, shall be stayed, and the assertion of any and all rights, remedies relating thereto shall also be stayed and barred, except as otherwise ordered by this Court, and this Court shall retain jurisdiction over any causes of action that have arisen or may otherwise arise under any such provision.

k.    The receiver, the receiver's employees and agents, and professionals employed by the receiver, are entitled to monthly payment of interim compensation for services rendered, at their normal hourly rates, and monthly reimbursement for all expenses incurred by them on behalf of the receivership estate, and the receiver is authorized to make such payments without further order of the court. Within 10 days after such monthly payments, the receiver shall serve written notice upon the counsel of record for receivership defendants of the amount paid to each payee, with an itemization of the services rendered or expenses incurred.

l.    Interim monthly fees paid shall be subject to review and approval by this Court, on a quarterly basis. This Court retains jurisdiction to award a greater or lesser amount as the full, fair and final value of such services. In the event that extraordinary services are performed by the receiver, or any professionals employed by the receiver, the Court may approve extraordinary compensation to such persons.

C.    Neither Plaintiff, the Commissioner of Corporations, the State of California, the Department of Corporations, nor any officer, employee or agent of the Department, shall have any liability for the payment, at any time, for any such fees or expenses in connection with said receivership.

/ / /

/ / /

/ / /

/ / /

-23-

State of California - Department of Corporations

State of California - Department of Corporations

1    3.    That plaintiff recover its costs of suit herein, including costs of investigation;

2    4.    For such and further relief as the court may deem just and proper.

4    Dated:    March 21, 2002

DEMETRIOS A. BOUTRIS
California Corporations Commissioner

By:

JAMES K. OPENSHAW
Attorney for the People of the
State of California

-24-

COMPLAINT FOR TEMPORARY RESTRAINING ORDER; PRELIMINARY INUNCTION;PERMANENT INJUNCTION;
CIVIL PENALTIES; AND ANCILLARY RELIEF

FILED
CIVIL BUSINESS OFFICE 10
CENTRAL DIVISION

2002 APR 16 A 10: 54

_____ THUNBERG
__ SUPERIOR COURT
_ DIEGO COUNTY, CA

1  DEMETRIOS A. BOUTRIS (SBN 124161)
   California Corporations Commissioner
2  ALAN S. WEINGER (SBN 86717)
   Supervising Counsel
3  VIRGINIA JO DUNLAP (SBN 142221)
   Acting Supervising Counsel
4  JAMES K. OPENSHAW (SBN 137667)
   Corporations Counsel
5  1515 K Street, Suite 200
   Sacramento, California  95814
6  Telephone:  (916) 322-6998

7  Attorneys for the People of the State of California

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF SAN DIEGO

11  THE PEOPLE OF THE STATE OF          Case No.: GIC 785226
    CALIFORNIA, by and through the
12  COMMISSIONER OF CORPORATIONS,
                                        **AMENDMENT TO COMPLAINT ADDING**
13        Plaintiff,                    **TRUE NAME DEFENDANT IN PLACE OF**
                                        **DOE DEFENDANT**
14  vs.
                                        (CCP §474)
15  C. PALMIERI ENTERPRISES, INC., a
    Corporation; CARMEN J. PALMIERI,    (Code of Civil Procedure §527(d)(1)
16  individually and doing business as  Corporations Code §§ 25110. 25210.
    NATIONAL MEDICAL FUNDING, and       25401. 25541; Financial Code §§ 17000,
17  TRUST MANAGEMENT SERVICES;          17200, *et seq.*)
    SIERRA FUNDING GROUP, INC., a
18  Corporation; INNOVATIVE FINANCIAL   DEPT:      69
    SERVICES, INC., an Arizona corporation;  JUDGE:     HON. RONALD S. PRAGER
19  ROBERT SHEARBURN; CC&K TRUST, by    TRIAL DATE:  None Set
20  and through CARMEN J. PALMIERI,     COMPLAINT FILED:  March 22, 2002
    Trustee; LAWRENCE C. REED; and DOES
21  1 through 100,

22        Defendants.

23

24      TO ALL PARTIES AND COUNSEL:

25      YOU ARE HEREBY NOTIFIED that Plaintiff, the People of the State of California, by

26  and through the Commissioner of Corporations, having learned the true name of a

27  previously-named fictitious defendant, amends the complaint to substitute the true name for

28

State of California - Department of Corporations

ORIGINAL

-1-

State of California - Department of Corporations

the fictitious name, as follows:

| FICTITIOUS NAME | TRUE NAME |
|---|---|
| DOE 1 | CONSTANCE C. PALMIERI |
| DOE 51 | TITAN ASSET MANAGEMENT, LLC |
| DOE 61 | ROBERT SHEARBURN, JR. |

1.    Plaintiff alleges, upon information and belief, that DOE 1 is the fictitious name of and is, in fact, Constance C. Palmieri, the spouse of Carmen J. Palmieri, and is and was an officer/director/manager or other control person in defendant C. Palmieri Enterprises, Inc., National Medical Funding and Trust Management Services, and as such, was, at all times mentioned in the complaint, a direct and willing participant in the offer and sale of unregistered securities, namely viatical investments, and in the misrepresentations, omissions and fraud which is alleged to have accompanied the unregistered securities sales transactions.    Plaintiff further alleges that Constance C. Palmieri knowingly provided substantial assistance to Carmen J. Palmieri in the violations of the Corporate Securities Law and Escrow Law.  As a result, Constance C. Palmieri is responsible and liable for all consequences of the violations of the California Securities Laws and should be the subject of the injunctive relief and civil penalties which may be imposed by the Court.

2.    Plaintiff alleges, upon information and belief, that DOE 51 is the fictitious name of and is, in fact, Titan Asset Management, LLC, a California Limited Liability Company organized, controlled and managed by Carmen J. Palmieri, and was utilized by defendant Carmen J. Palmieri as a conduit for investor funds in the purchase of various real estate properties for the benefit of Carmen J. Palmieri, or companies in which Palmieri maintained or maintains ownership or control.  As a result, Titan Asset Management, LLC is, upon information and belief, a direct beneficiary of investor funds and an essential part of the scheme to defraud investors.  As a result, Titan Asset Management is responsible and liable for all consequences of the violations of the California Securities Laws and should be the subject of the injunctive relief and civil penalties which may be imposed by the Court.

AMENDMENT TO COMPLAINT ADDING TRUE NAME DEFENDANT IN PLACE OF DOE DEFENDANT

State of California - Department of Corporations

3.      Plaintiff alleges, upon information and belief, that the defendant DOE 61 is the fictitious name of and is, in fact, Robert Shearburn, Jr. who was, at all times mentioned, a natural person residing in Arizona or Nevada, whose principal place of business was alternatively in Arizona or Nevada, and was, on information and belief, working with Palmieri, and was knowingly providing substantial assistance to Palmieri and engaged in the offer and sale of unregistered securities in California and other states, specifically including Arizona.   Plaintiff is informed and believes, and thereon alleges, that Robert Shearburn, Jr., working in conjunction with Palmieri and Robert Shearburn, was engaged in activities with the intent to defraud investors with sales of viatical investments.

DATED:  April 12, 2002

DEMETRIOS A. BOUTRIS
California Corporations Commissioner

By: _____
JAMES K. OPENSHAW
Attorney for the People of the
State of California

-3-

AMENDMENT TO COMPLAINT ADDING TRUE NAME DEFENDANT IN PLACE OF DOE DEFENDANT

# EXHIBIT "C"

0069

# C. Palmieri Enterprises



**Total Company Income**

**Viaticals**

$125,000,000 total company annual income

$2,600,000 average annual viatical sales

($13,000,000 sales of viaticals over 5-year life of viatical settlement license)

# EXHIBIT "D"

# LAW OFFICES OF JAMES F. POKORNY

### A PROFESSIONAL LAW CORPORATION
110 WEST "C" STREET, SUITE 1504
SAN DIEGO, CALIFORNIA 92101

Telephone: 619/239-8142
Facsimile: 619/239-8141
email: jpokorny@pacbell.net

January 6, 2004

Honorable Frank A. Brown
Superior Court of California
County of San Diego
220 W. Broadway
San Diego, CA 92101

RE:   PEOPLE v. CARMEN JOHN PALMIERI
       San Diego Superior Court Case No. CD170477

Dear Judge Brown:

As the court may be aware, the defense of this case was initially handled by my offices when Mr. Palmieri retained me in March of 2002. At that time it became apparent to me that Mr. Palmieri was desperately attempting to put his financial affairs in order to allow him to repay scores of investors a sum of money totaling in the millions of dollars.

At the time, a number of civil suits were pending against Mr. Palmieri as well. My marching orders were to contact the investors as well as the attorneys handling the civil matters, and to explain the liquidation process that Mr. Palmieri was instituting in order to generate cash sufficient to begin to pay off the restitution owed.

My impression at the time was that my client wanted nothing more than to repay the victims in full, with interest. My office staff took the time, at the direction of our client, to contact some ninety victims, many of them elderly, to explain to them what steps Mr. Palmieri was taking to generate the cash necessary to repay them in full.

By the third week of March, 2002, Mr. Palmieri had several escrows involving the sale of real estate in process, and scheduled to close by mid-April. The sales were anticipated to net approximately $1M which would immediately be divided up and sent by my offices to investors as a first payment.

Honorable Frank A. Brown
January 6, 2004
Page Two

At the time, Mr. Palmieri had been married to his wife of six years, and he had resided in San Diego County for forty five years. They owned a $400,000 home in north county and owed nearly $200,000 on it.   The Palmieris were comfortable, but clearly did not enjoy a lavish lifestyle.   Prearranged and complicated plans to adopt a daughter in Russia were to take place at the end of March.  Our offices notified the authorities involved in this case, including the Office of the District Attorney, to advise of the travel plans.

Being fully aware of impending criminal prosecution, the Palmieris made the trip to Russia and returned to San Diego, intent on repaying the investors in this case.

It should be noted that Mr. Palmieri was involved in several legitimate businesses, including C. Palmieri Enterprises, Inc; Sierra Funding Group; and Trust Management Services.

As an example, Sierra Funding Group was a mortgage brokerage entity licensed in thirteen states.  It handled underwriting for various banks including Washington Mutual, and employed approximately twenty people in its Mission Valley office.

Obviously, then, Mr. Palmieri had the wherewithal to implement a repayment plan, and to follow through with it.

On March 29, 2002 any chance Mr. Palmieri had of repaying his investors was completely and irrevocably crushed by the appointment of a receiver at the behest of the California Department of Corporations.  This was literally the last day that Mr. Palmieri was able to conduct any business on behalf of himself personally and his entities.  In a very real sense, from this day forward he was stripped of any ability to manage any of his personal assets or business properties.

Why is this significant?  It essentially took away any ability to ameliorate the financial losses incurred by the victims.  Instead, an expensive, inefficient, and cumbersome receivership was put in place which itself cost the estate untold thousands of dollars in legal fees.  Such fees would have gone to the investors but for the Department of Corporations' ill-conceived and short-sighted plan to marshall assets and to shut down businesses.

Shortly after the initiation of the receivership, other counsel was retained to handle the litigation filed by the Department of Corporations.  In the meantime our offices were in regular contact with the Office of the District Attorney.  As of late April, 2002, our offices were advised by the prosecution that the filing of a criminal complaint was yet months away, and that a self-surrender was not going to pose a problem.

On October 23, 2002 Mr. Palmieri was arrested, despite our agreement for a self surrender.  I felt that this was unconscionable, especially since Mr. Palmieri had demonstrated that he was

Honorable Frank A. Brown
January 6, 2004
Page Three

not a flight risk, and since he had retained counsel to handle the concerns of the Department of Corporations.

Mr. Palmieri continues to remain in custody to this very day. When he was no longer in a position to pay for counsel in this case, the transition was made to attorney William Trainor of the Office of the Public Defender. Mr. Trainor has very capably handled this case ever since.

At the time of the transition of counsel, Mr. Palmieri continued to express to me his fervent desire to pay each and every one of the victims in this case. I could see the frustration in his eyes since he knew that he had been stripped of any ability to pay these people who so richly deserved to be made whole.

I wanted to point this out to the court because it is my understanding that many of the victims that we spoke with years ago will be present at the sentencing hearing. Having spoken with many of them, I will acknowledge that their stories are dramatic, heartfelt and touching. We never disputed this; from the very beginning our efforts were aimed toward paying them their due. I hope that the court will take into account the very real efforts made by Mr. Palmieri to atone for his deeds, and his virtual inability to do anything whatsoever to help these people since the government elected to shut him and his businesses down.

I am certain that this court has had the opportunity to sentence individuals charged with economic crimes who neither expressed remorse nor demonstrated any capability or intention of repaying their victims. Such individuals richly deserved harsh sentencing sanctions. Mr. Palmieri, for all of the reasons set forth above, is clearly not such an individual. He has already served a substantial period of time in custody. Further custody will only slow down the time it will require to fully repay the victims in this case.

Respectfully yours,

James F. Pokorny

JFP/mal

Hon. Frank A. Brown
San Diego Superior Court, Department 23
April 22, 2004
Page 3 of 3


Cc:    Blair Krueger, Esq.
       James F. Pokorny

# EXHIBIT "E"

STATE OF CALIFORNIA — BUSINESS, TRANSPORTATION AND HOUSING AGENCY                    ARNOLD SCHWARZENEGGER, *Governor*

# DEPARTMENT OF CORPORATIONS

**www.corp.ca.gov**



## WILLIAM P. WOOD
**California Corporations Commissioner**
**Sacramento, California**

IN REPLY REFER TO:
FILE NO:  Palmieri

### FAX TRANSMITTAL

Date:  March 12, 2004

Total number of pages, including this cover sheet:     3

TO:  James F. Pokorny, Esq.                                          / FAX NO:      619-239-8141

COMPANY/AGENCY:  _____

FROM:  James K. Openshaw, Esq.                    /TELEPHONE NO:     916-324-5216
                                                                      FAX NO:     916-445-6985

SUBJECT/REFERENCE:   People vs. Palmieri/National Medical Funding, et al.

(     )      URGENT                    ( X )  ROUTINE

(     )      ROUTE TO ADDRESSEE

(     )      TELEPHONE ADDRESSEE FOR PICK-UP

(     )      TELEPHONE SENDER WHEN RECEIVED

COMMENTS:    Original will [ XX ]  will not [  ] follow by mail

1. My letter dated March 12, 2004 to Mr. Pokorny.

**This facsimile message is intended only for the use of the individual or entity named above and contains information which is confidential, non-public or legally privileged. Any dissemination or distribution of this message other than to its intended recipient is strictly prohibited. If you have received this message in error, please notify us by telephone immediately and return the original message and all copies to us by mail to the address of the sender.**

* Securities * Franchises * Off-Exchange Commodities * Investment and Financial Services *
* Independent Escrows * Consumer and Commercial Finance Lending * Residential Mortgage Lending *

| | | | |
|---|---|---|---|
| LOS ANGELES 90013-2344 | SACRAMENTO 95814-4052 | SAN DIEGO 92101-3697 | SAN FRANCISCO 94102-5303 |
| 320 WEST 4TH STREET | 1515 K STREET, SUITE 200 | 1350 FRONT STREET | 1390 MARKET STREET |
| (213) 576-7500 | (916) 445-7205 | (619) 525-4233 | (415) 557-3787 |

Rev. (5/01)

STATE OF CALIFORNIA – BUSINESS, TRANSPORTATION AND HOUSING AGENCY          ARNOLD SCHWARZENEGGER, *Governor*

# DEPARTMENT OF CORPORATIONS
*California's Investment and Financing Authority*



**WILLIAM P. WOOD**
**California Corporations Commissioner**
**Sacramento, California**

IN REPLY REFER TO:
FILE NO:  Palmieri

James F. Pokorny, Esq.
110 West "C" Street, Suite 1504
San Diego, CA 92101

RE:     *People v. C. Palmieri Enterprises, Inc., et al.*
San Diego Superior Court No. 785226

Dear Mr. Pokorny:

This will confirm our recent conversations regarding the appearance of your client, Carmen J. Palmieri, at the civil trial, now set for assignment on April 30, 2004, in Department 71 of the San Diego Superior Court. I appreciate your representation that Mr. Palmieri is prepared to cooperate with the Department and the Receiver and to provide certain information about the investment scheme and the organization of his businesses. This will necessarily require face-to-face meetings involving me, the Receiver and Mr. Palmieri over the next several weeks, and his testimony at trial. You indicated that with Mr. Krueger's assistance, you are attempting to work with the California Department of Corrections to make whatever arrangements may be necessary to secure Mr. Palmieri's presence at meetings and trial. If I can do anything to help in that regard, please let me know.

I am prepared to meet with you and Mr. Palmieri at just about any reasonable time. I will need a couple of days lead time to make travel arrangements. I know you understand that time is of the essence since trial is a mere six weeks away and we have a Trial Readiness Conference on April 16, 2004. If Mr. Palmieri is going to be as cooperative as you indicate, he must be prepared to immediately provide the maximum amount of information possible and also agree to testify at the trial, which will likely focus primarily on the sales operation run by Mr. Shearburn.

In order to limit the time and complexity of trial, the Department also seeks your client's stipulated judgment and admission that certain facts are true. The stipulated judgment will resolve remaining issues between the Department and Mr. Palmieri, individually, and his related business enterprises. For your information, a default has been entered against all the corporate entities and the time for challenging the default has long passed. In addition, Mr. Palmieri has been barred by Court Order from introducing any evidence at the trial, specifically including evidence relating to any issue raised by the Department's discovery requests and any defense. The facts to which we seek a stipulation relate to the operation of the business(es), lack of any interest by Mr. Palmieri or his companies in "viaticals" or life insurance policy death benefits

* Securities * Franchises * Off-Exchange Commodities * Investment and Financial Services *
* Independent Escrows * Consumer and Commercial Finance Lending * Residential Mortgage Lending *

SACRAMENTO 95814-4052          SAN FRANCISCO 94102-5303          LOS ANGELES 90013-2344          SAN DIEGO 92101-3697
1515 K STREET, SUITE 200       1390 MARKET STREET, SUITE 810     320 WEST 4TH STREET, SUITE 750   1350 FRONT STREET, ROOM 2034
(916) 445-7205                 (415) 557-3787                    (213) 576-7500                   (619) 525-4233

1-866-ASK-CORP                         www.corp.ca.gov                              1-866-275-2677

James F. Pokorny, Esq.
March 12, 2004
Page 2 of 2

that were purportedly sold to investors, and other details about the investment scheme. The Department is prepared to negotiate to some extent on penalties and other relief it currently seeks, if the interests of the investors are adequately protected and, through Mr. Palmieri's assistance, additional funds or sources of funds can be identified, documented, and rendered reachable by judgment, either before or after trial.

I look forward to continued communications with you and Mr. Krueger in this regard. Please feel free to contact me any time if you have questions or issues to discuss.

Very truly yours,

WILLIAM P. WOOD
California Corporations Commissioner

By _____
JAMES K. OPENSHAW
Corporations Counsel
Enforcement & Legal Services Division
Sacramento Office:  (916) 324-5216

Cc:    Blair Krueger, Esq.
       Charles LaBella, Receiver

# EXHIBIT "F"

State of California - Department of Corporations

1 | WILLIAM P. WOOD
California Corporations Commissioner
2 | VIRGINIA JO DUNLAP (SBN 142221)
Deputy Commissioner
3 | ALAN S. WEINGER (SBN 86717)
Supervising Counsel
4 | JAMES K. OPENSHAW (SBN 137667)
Corporations Counsel
5 | 1515 K Street, Suite 200
Sacramento, California 95814
6 | Telephone: (916) 322-6998

7 | Attorneys for the People of the State of California

8

9 |         SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |            FOR THE COUNTY OF SAN DIEGO

11 | THE PEOPLE OF THE STATE OF     | Case No.: GIC 785226
CALIFORNIA, by and through the
12 | COMMISSIONER OF CORPORATIONS,   | COORDINATED WITH:

13 |      Plaintiff,               | GIC 776797, GIC 779690, GIC 780133
GIC 781109, GIC 781791, GIC 782410
14 | vs.                   | GIC 782489, GIC 783893, GIC 784107
GIC 779347
15 | C. PALMIERI ENTERPRISES, INC., a
Corporation; CARMEN J. PALMIERI, | NOTICE OF DEPOSITION OF CARMEN J.
16 | individually and doing business as NATIONAL | PALMIERI
MEDICAL FUNDING, and TRUST
17 | MANAGEMENT SERVICES; SIERRA
FUNDING GROUP, INC., a Corporation;
18 | INNOVATIVE FINANCIAL SERVICES,
INC., an Arizona corporation; ROBERT
19 | SHEARBURN; CC&K TRUST, by and through | Date: April 14, 2004
CARMEN J. PALMIERI, Trustee; | Time: 9:30 a.m.
20 | LAWRENCE C. REED; and DOES 1 through | Department: N/A
100,
21 |
    Defendants.
22 | _____ | TRIAL DATE: April 30, 2004

23 | AND COORDINATED CASES.

24

25 |     YOU ARE HEREBY NOTIFIED that on the date and time, and in the location indicated

26 | below, Plaintiff will take the deposition of the following:

27 | DEPONENT:      Carmen J. Palmieri, V 19689

28 | DATE:         April 14, 2004

1   TIME:               9:30 a.m.

2   LOCATION:       Richard J. Donovan Correctional Facility

3                        480 Alta Road

4                        San Diego, CA 92179

5                        Phone: (619) 661-7862 – Litigation Coordinator: Graham McGruer

6       NOTICE: Each person intending to appear at this deposition must, prior to the deposition,

7 notify the Litigation Coordinator, Mr. McGruer, and provide identifying information. There will be

8 some delay in checking into the facility, so please plan accordingly.

9       The deposition will be taken before a certified court reporter. The deposition will continue

10 from day to day as the circumstances may require, until completed.

11 DATED: April 01, 2004

12                             WILLIAM P. WOOD
                             California Corporations Commissioner

13

14                             By:

15                               JAMES K. OPENSHAW
                              Corporations Counsel

16                               Attorney for the People of the
                              State of California

17

18

19

20

21

22

23

24

25

26

27

28

*State of California - Department of Corporations*

-2-
NOTICE OF DEPOSITION OF CARMEN J. PALMIERI

State of California - Department of Corporations

1  DEMETRIOS A. BOUTRIS (SBN 124161)
   California Corporations Commissioner
2  VIRGINIA JO DUNLAP (SBN 142221)
   Deputy Commissioner
3  ALAN S. WEINGER (SBN 86717)
   Supervising Counsel
4  JAMES K. OPENSHAW (SBN 137667)
   Corporations Counsel
5  1515 K Street, Suite 200
   Sacramento, California  95814
6  Telephone:  (916) 322-6998

7  Attorneys for the People of the State of California

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF SAN DIEGO

11  THE PEOPLE OF THE STATE OF          Case No.: GIC 785226
    CALIFORNIA, by and through the
12  COMMISSIONER OF CORPORATIONS,       COORDINATED WITH:

13          Plaintiff,                  GIC 776797
                                        GIC 779690
14  vs.                                 GIC 780133
                                        GIC 781109
15  C. PALMIERI ENTERPRISES, INC., a    GIC 781791
    Corporation; CARMEN J. PALMIERI,    GIC 782410
16  individually and doing business as  GIC 782489
    NATIONAL MEDICAL FUNDING, and       GIC 783893
17  TRUST MANAGEMENT SERVICES;          GIC 784107
    SIERRA FUNDING GROUP, INC., a       GIC 779347
18  Corporation; INNOVATIVE FINANCIAL
    SERVICES, INC., an Arizona corporation;  PROOF OF SERVICE
19  ROBERT SHEARBURN; CC&K TRUST, by
    and through CARMEN J. PALMIERI,
20  Trustee; LAWRENCE C. REED; and DOES
    1 through 100,
21
22          Defendants.
23  ──────────────────────────────
24  AND COORDINATED CASES.
25
26          I, HEREBY DECLARE:
27          I am a citizen of the United States employed in the City and County of Sacramento,
    California.  My business address is 1515 K Street, Suite 200, Sacramento, California 95814.
28  I am over the age of 18 years and not a party to the above-entitled action.  I am familiar with

                                    -1-

1  the mail collection practices of the Department of Corporations whereby each day's mail is
2  collected, sealed, given the appropriate amount of postage and deposited in a U.S. mailbox
   after the close of each day's business.

3          On April 1, 2004, I served the following:

4      **1.    NOTICE OF DEPOSITION OF CARMEN J. PALMIERI**

5  By the following method:

6    __XX__ **MAIL** by causing a true copy thereof to be placed in a sealed envelope with postage
7  thereon fully prepaid to be placed in the United States mail at Sacramento, California
   addressed as indicated below.

8  _____ **PERSONAL SERVICE** by causing a true copy to be delivered by hand to the
9  office(s) of the parties, or to the individuals indicated below.

10 _____ **OVERNIGHT DELIVERY** by causing such document to be delivered by overnight
   delivery to the office(s) of the parties indicated below.

11 _____ **FACSIMILE** by causing such document to be transmitted by facsimile machine to
12 the office(s) of the parties indicated below.

13

14                      SEE ATTACHED SERVICE LIST

15

16        I declare under penalty of perjury under the laws of the State of California that the
17 foregoing is true and correct and that this declaration was executed in Sacramento,
18 California on the date indicated below.

19 DATED: April 1, 2004

20

21                                    Dean Haakenson

22                                    Corporations Office Technician

23

24

25

26

27

28

                                    -2-

*State of California - Department of Corporations*

<u>SERVICE LIST</u>

Robert Blair Krueger II, Esq.
The Krueger Group, LLP
2726 Shelter Island Dr. #370
San Diego, CA 92106

Ken Sobel, Esq.
Ken Sobel & Associates
225 Broadway, 19th Floor
San Diego, CA 92101

Charles LaBella
Andrew W. Robertson
LaBella & McNamara
401 West "A" Street, Suite 2300
San Diego, CA 92101

Mr. Jack Odom
230 Cochise Drive
Sedona, AZ 86351

Gregory Fritts
27656 Bahamonde
Mission Viejo, CA 92692

Conley and Bonnie Woltman in Pro Per
221 Ponderosa Homes Road
Bayfield, CO 81122

Peter M. Mayer
Carol M. Mayer
730 East Tanya Trail
Phoenix, AZ 85086

Superior Court of San Diego County
Department 71
330 W. Broadway
San Diego, CA 92101

# EXHIBIT "G"

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

- ☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814
- ☐ FAMILY COURT, 1555 6TH AVE., SAN DIEGO, CA 92101-3294
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6695
- ☐ EAST COUNTY DIVISION, 250 E. MAIN, EL CAJON, CA 92020-3941
- ☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

PLAINTIFF(S)/PETITIONER(S)

PEOPLE OF THE STATE OF CALIFORNIA

DEFENDANT(S)/RESPONDENT(S)

C. PALMIERI ENTERPRISES, INC., et al.,

**ORDER TO PRODUCE**

FOR COURT USE ONLY

F I L E D
Clerk of the Superior Court

APR 2 7 2004

By: K SANDOVAL, Deputy

CASE NO:
GIC 785226

DA NO:

---

TO: ☒ Sheriff of San Diego County
☐ Director of San Diego County Adult Institutions
☒ Warden, R. J. Donovan Correctional Facility

You are ordered to produce the defendant/witness  C. J. Palmieri

Booking #/CDC #  V19689 , from  R. J. Donovan Corrections Facility  and

deliver said defendant/witness to the Superior Court, at the address indicated above, on  May 3, 2004

to Department  71 , at  9:00  a.m., and upon completion of the hearing to return the

defendant/witness to the place of incarceration.

Dated:  APR 2 7 2004

_____
Judge of the Superior Court

RONALD S. PRAGER

---



**CLERK'S CERTIFICATE**

The foregoing is a full, true and correct copy of the original on file in this office.

Date:  APR 2 7 2004

CLERK OF THE SUPERIOR COURT

by _____, Deputy

KATHLEEN SANDOVAL

# EXHIBIT "H"

STATE OF CALIFORNIA – BUSINESS, TRANSPORTATION AND HOUSING AGENCY          ARNOLD SCHWARZENEGGER, *Governor*

# DEPARTMENT OF CORPORATIONS
*California's Investment and Financing Authority*



**WILLIAM P. WOOD**
**California Corporations Commissioner**
**Sacramento, California**

IN REPLY REFER TO:
FILE NO:  Palmieri

August 11, 2004

Carmen J. Palmieri
Booking Number V19689
4-18-238 L
480 Alta Road
San Diego, CA 92179

RE: *People vs. Palmieri, et al.*

Dear Mr. Palmieri:

For your information, Judge Prager ruled in favor of the Department after the trial and issued a judgment against Robert N. Shearburn in a total amount of nearly $20 million, and against Bobby Shearburn in an amount of nearly $100,000. He commented that Shearburn had virtually no credibility in his testimony. I appreciated your testimony which provided important details to Judge Prager about how the viaticals investment, CPEI and your related companies were set up and operated.

I regret that we could not meet on July 21st, but it was a mix-up with the prison, not me. I made prior arrangements to meet with you and was there for nearly 1 1/2 hours waiting. I had to leave so that I could make the court appearance at which Judge Prager issued his decision and judgment. Mr. McGruer said he would let you know I was there.

I received your letter and am still very interested in speaking with you. Coincidentally, I have been contacted by the Receiver for RDI who also wants to speak with you. I told him I would contact you for the benefit of both of us and, possibly, the investors. He would like to arrange for your sworn testimony on October 6th regarding your involvement with RDI. I would like to be there also. Are you willing to speak with me and the Receiver?

Unfortunately, I really do not believe I can arrange for an earlier meeting between just you and me unless I know specifically what information you have to offer. I hope you understand that with the state budget situation as it is, there must be a compelling need for travel for me to receive authorization from the Department. I do not believe there will be any future court appearances on this case, since it is pretty much concluded. Absent other circumstances, a

♦ Securities ♦ Franchises ♦ Off-Exchange Commodities ♦ Investment and Financial Services ♦
♦ Independent Escrows ♦ Consumer and Commercial Finance Lending ♦ Residential Mortgage Lending ♦

SACRAMENTO 95814-4052          SAN FRANCISCO 94102-5303          LOS ANGELES 90013-2344          SAN DIEGO 92101-3697
1515 K STREET, SUITE 200          1390 MARKET STREET          320 WEST 4TH STREET          1350 FRONT STREET
(916) 445-7205          (415) 557-3787          (213) 576-7500          (619) 525-4233

1-866-ASK-CORP          www.corp.ca.gov          1-866-275-2677

Carmen J. Palmieri
August 11, 2004
Page 2 of 2

court appearance would be the only reason I would be authorized to travel to San Diego on this case and I do not have any others pending in the San Diego area.

Please let me know how you want to handle this. If you can arrange a date and time for a telephone call, I can make myself available. Thanks for your continued cooperation.

Very truly yours,

WILLIAM P. WOOD
California Corporations Commissioner

By _____

JAMES K. OPENSHAW
Corporations Counsel
Enforcement & Legal Services Division
Sacramento Office: (916) 324-5216

# EXHIBIT "I"

# LA BELLA & MCNAMARA, LLP

October 30, 2008

Andrew W. Robertson
arobertson@labellamcnamara.com

*Via U.S. Mail*

C.J. Palmieri V19689
Ironwood State Prison
ISP C2-127
P.O. Box 2199
Blythe, CA 92226

> **Re:** **Palmieri Receivership – *Commissioner of Corporations v. Palmieri Enterprises, Inc. et al, Case No.: GIC 785226***

Dear Mr. Palmieri:

We write in response to your letters requesting information about the receivership which was terminated in March, 2007.

The Receiver has previously stated his findings on most of the subjects raised in your letters. These findings are contained in reports filed with the court and served on your counsel of record during the course of the receivership. Since you apparently do not now have counsel or ready access to the reports, we will cite you to relevant portions of the reports.

Please bear in mind that this letter is not intended as a comprehensive summary of the receivership or of the Receiver's findings and opinions—it is just an effort to provide you the information requested.

Forensic Accounting/ Funds Accounted For

By the end of the receivership, we were able to roughly account for the funds invested by viatical investors and we had no evidence that you had hidden assets. The forensic accounting was summarized in a one-page chart ("Funds Summary") prepared by the D.A.'s forensic accountant. (Receiver's Final Account and Report, March 7, 2007, page 14, lines 12-25; Funds Summary is Exhibit F to that Report).

In January, 2004, the Receiver reported to the court that, in December 2003, you met informally with the Receiver's staff and affirmed the basic accuracy of the Funds Summary. (Receiver's Interim Report, January 8, 2004, page 6, line 9 through page 7, line 15).



LA BELLA &
MCNAMARA, LLP

C.J. Palmieri V19689
September 30, 2008
Page 2 of 3


Residential Properties

In November 2004, you voluntarily entered into a Stipulation with the Receiver which released your rights to ten residential properties in San Diego. There was no clear evidence that these properties were purchased with funds traceable to viatical contracts. In effect, you contributed the net equity of these properties ($1,127,696) to the receivership estate. (Receiver's Final Account and Report, March 7, 2007, page 8 line 25 through page 9, line 12).


Investment of Funds from Viatical Investors

We were able to confirm that you invested a substantial portion of the funds from viatical investors into legitimate real estate projects and properties. At least $6.4 million was paid out as down payments on 13 commercial properties . Although we cannot confirm the exact amount of the final losses, we were also able to confirm that you invested at least $4.2 million in two different off-shore investments (Dennell Financial Ltd. and Resource Development International) which both turned out to be frauds. The receivership was ultimately unable to recover any funds from either operation. (Receiver's Interim Report, January 8, 2004, page 4, line 21 through page 6, line 8). You have advised us that you intended to use the cash flow and appreciation from these properties and investments to fund repayments to viatical investors. We can not speak to your state of mind, but can confirm that our investigation indicated that most of the net viatical funds were placed into some form of an investment, usually via separate LLC entities, as opposed to direct personal consumption.


Number of Bank Accounts

In the Initial Inventory of Assets, the Receiver identified 24 separate bank accounts held in your name or the names of your related entities. Those accounts broke down as follows:

| | |
|---|---|
| 13 | 13 accounts in the name of 13 separate LLCs, each of which was the legal owner of a different real estate property (8 apartment buildings, 5 self-storage properties). |
| 7 | 7 accounts in the names of 5 separate businesses (Titan Asset, Trust Management Services, Sierra Funding, C Palmieri Enterprises) and their respective payroll accounts |
| 1 | Joint checking account with the co-owner of a cabin in Big Bear. |
| 1 | Personal savings account and |
| 2 | Personal checking accounts. |
| 24 | |

(Receiver's Initial Inventory of Defendants' Assets, April 26, 2002, page 8 line 14 through page 10, line 8).

40580



C.J. Palmieri V19689
September 30, 2008
Page 3 of 3

<u>Lifestyle</u>

In a letter dated January 6, 2004 to Judge Brown, your counsel James Pokorny described your lifestyle as follows: "The Palmieris were comfortable but clearly did not enjoy a lavish lifestyle." We can concur in this characterization. During the course of the receivership, we found no evidence of a lavish personal lifestyle.

Sincerely,
LA BELLA & MCNAMARA, LLP

By: _____

Andrew W. Robertson
Attorneys to Court-Appointed Receiver
Charles G. La Bella

AWR:amm

40580

Letter to CJ Palmieri 9/30/08
Appendix – Excerpts from Receiver Reports

Forensic Accounting/Funds Accounted For

The Receiver's Final Report states:

"With substantial help from the District Attorney's forensic accountants, we were able to confirm most of the details as to the funds flowing in and out of Trust Management Services ("TMS"), the primary vehicle for Palmieri's viatical investments. From January 1999 through May 2002, approximately $32 million flowed into TMS, $25.2 million of which derived from viatical investors. We can also track where the bulk of that $32 million went.

This information was summarized in a chart prepared by the District Attorney's forensic accountant – Exhibit F to this Report – which has been previously submitted to the Court.

We can roughly account for the viatical funds flowing into TMS and we have no current evidence that Mr. Palmieri has secreted any substantial funds or has any hidden assets. The imposition of a 30-year jail sentence has not led to any new information from Mr. Palmieri as to additional assets."

Receiver's Final Report, March 7, 2007, page 14, lines 12-25
(A copy of Exhibit F is included at the end of this Appendix.)

The Receiver's Interim Report dated January 8, 2004 states:

"During the second half of 2002, my staff met with Mr. Palmieri several times, at his request, primarily to hear him out on his plans to relaunch the Sierra mortgage business. I also attended one of those sessions.

In December 2003, we secured an order from Judge Prager granting us leave to take Mr. Palmieri's deposition. The deposition was convened on December 18, 2003. Upon the advice of his counsel, Mr. Palmieri declined to answer questions on the record at least until after his sentencing based on his Fifth Amendment rights. He and his counsel did indicate that they were prepared to meet with the Receiver's staff informally to answer questions regarding financial operations. We have since met with him and his counsel in person and by conference call. Mr. Palmieri has provided us oral and written answers to questions. In these meetings and conferences, Mr. Palmieri

1

has confirmed and/or clarified financial information we have independently developed over the last 20 months. In particular, we sought Palmieri's affirmation that the summary of TMS funds in Exhibit B [Exhibit F to Final Report dated March 7, 2007] was accurate and he has stated that it appears to be.

At the onset of this receivership, we did not receive any meaningful cooperation from Mr. Palmieri. Indeed, from the outset the receivership requested a definitive list of all victims and assistance in tracing the flow of funds among and between the various Palmieri entities. However, Palmieri consistently resisted providing this information because of the pending criminal proceeding. This forced the receivership to do things the hard way. If Mr. Palmieri had cooperated fully with the Receiver from the very outset, the receivership would have operated faster, more economically, and would have been able to provide a greater and speedier return to investors."

Receiver's Interim Report, January 8, 2004, page 6, line 20 – page 7, line 15;

Residential Properties

The Receiver's Final Report states:

"When this receivership commenced, the Palmieri's had assembled a portfolio of lower-end residential properties in the San Diego area. These properties were not clearly assets of the receivership because there was no clear evidence they were purchased with funds traceable to the viatical contracts. Their ownership was further complicated by Mrs. Palmieri's community and/or separate property claims to these properties. After completion of the Palmieri's divorce and Mrs. Palmieri's settlement with the California Department of Corporations, we were able to secure a stipulation from Mr. Palmieri in November 2004 whereby he released any claims to the ten properties that he owned post divorce and post settlement. In effect, he contributed their net equity to the receivership estate. By Order dated January 22, 2004, the Court authorized and directed and directed the Receiver to complete the sales.

The properties were sold between December 2003 and March 2004 and closed escrow between February and April 2004. The combined gross sales price for the ten properties was $2,236,340 with net cash from escrow to the Receivership estate of $1,127,696. Attached as Exhibit D is a summary of these transactions."

Receiver's Final Report, March 7, 2007, page 8, line 25 - page 9, line 12.

Investment of Funds from Viatical Investors

See Funds Summary, Exhibit F to the Final Report.

As to the Dennell and RDI investments, the Receiver's Interim Report dated January 8, 2004 states:

> "We have confirmed that Mr. Palmieri invested in two "prime plus" banking investment programs which promoted international banking relationships and very high returns. In late 1998 and early 1999, Palmieri invested $400,000 in Dennell Financial Ltd, based in Phoenix, which promised 4% monthly returns. Beginning in mid 1999 through 2000, Palmieri also invested in at least $3.8 million in Resource Development International ("RDI"), based in Tacoma, Washington, which later evolved into Jade Asset Management, Ltd., ("Jade") based in Nevis, West Indies. It is obvious that these "invested" funds were either viatical funds or monies obtained by Palmieri against the properties identified above.
>
> In connection with the RDI/Jade program, investment returns to Mr. Palmieri were made to a Belize corporation, XL Capital Management, Inc., which maintained an account at the Bank of Nevis. Both Dennell and RDI/Jade, apparent frauds in their own right, came to unhappy ends with huge losses to their investors. Dennell was shut down by the SEC and placed under the control of a Receiver in August 1999. The Dennell Receiver was able to return nearly 50% to each investor, but he denied Mr. Palmieri's claim for $400,000 in its entirety. The principal behind Dennell, Ben Cook, was sentenced in Arizona state court in June 2003 to 17.5 years for securities fraud and ordered to make restitution of $31 million.
>
> RDI/Jade was placed in the hands of a Receiver in March 2002 after the SEC brought suit for securities fraud. Its principals, David and James Edwards, are now in prison in Texas on civil contempt charges and are awaiting trial on criminal charges in Santa Clara, California. The Receiver in Texas has advised us that it is unlikely there will be any money available for distribution to investors. Estimated losses are approximately $100 million.
>
> Our review of Palmieri's financial records indicates that he invested $3.8 million into RDI/Jade from the account of TMS. $3.1 million was returned to TMS via XL Capital and another $500,000 was returned to TMS directly from RDI. To date, we have not uncovered any evidence of additional investments by Palmieri in RDI/Jade which could be the subject of a claim to the Receiver. Counsel for the

3

RDI/Jade Receiver has confirmed to us that they have no evidence of any remaining investment by Palmieri.

Mr. Palmieri has advised us - at settlement discussions on November 6, 2003 and during several meetings thereafter - that he believes there may remain a substantial investment in the Jade prime bank program of $6 -7 million. He has also reported that it was his inability to recover these offshore investment funds in late 2001 and early 2002 that contributed in part to his inability to stay current with payments to viatical investors. As noted above, neither our records nor those of the RDI/Jade Receiver, evidence such an additional investment. It is clear that Palmieri was an investor in RDI/Jade, but we have found no bank records (and Mr. Palmieri has not pointed us to any such records) which confirm any additional investment. Even if there had been such an investment, the issue appears moot as the Receiver for RDI/Jade has reported that there is no money remaining in Jade."

Receiver's Interim Report, January 8, 2004, page 4, line 20 – page 6, line 8

## Number of Bank Accounts

The Receiver's Initial Inventory of Accounts includes this summary of Bank Accounts:

### 1.   Rancho Santa Fe National Bank

| Account Name | Account Number |
|---|---|
| Alder Avenue Apartments, LLC | 103729370 |
| Juniper Terrace Apartments, LLC | 1037300770 |
| Casa Del Sol Apartments, LLC | 103731570 |
| E Street Apartments, LLC | 103732370 |
| Juniper & Pepper Ave. Apartments, LLC | 103733170 |
| Titan Asset Management, LLC | 103736670 |
| Titan Asset Management Payroll Account, LLC | 103736672 |
| Parkview Apartments, LLC | 103797870 |
| Randall Arms Apartments, LLC | 103819270 |
| Olive Street Apartments, LLC | 103827370 |

### 2. Wells Fargo Bank

| Account Name | Account Number |
|---|---|
| Trust Management Service | 0465329126 |
| Secured Mini Storage | 085023012 |
| American Self Storage | 2048668665 |
| Ironwood Self Storage | 0467796421 |
| Strongbox Mini Storage | 0467796454 |
| PMA Checking Account | 0734963697 |
| Advantage Checking Account | 0790218499 |
| Advantage Index Savings Account | 6850529702 |

### 3. Bank of America

| Account Name | Account Number |
|---|---|
| ABC Mini Storage | 0818808077 |

### 4. Union Bank of California

| Account Name | Account Number |
|---|---|
| John & Julie Elliot Carmen & Contance Palmieri | 0561257114 |

### 5. California Bank and Trust

| Account Name | Account Number |
|---|---|
| C Palmieri Enterprises d/b/a Sierra Funding | 2060049671 |
| C Palmieri Enterprises | 2060048941 |
| C. Palmieri Enterprises, Inc. Payroll | 2060055051 |
| Sierra Properties | 2060053781 |

Initial Inventory of Assets, April 26, 2002, page 8, line 13 through page 10 line 8.

1   Carmen John Palmieri V19689
    CMC – Echo 8-13L
2   P.O. Box 8103
    San Luis Obispo, CA 93403
3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                      SOUTHERN DISTRICT OF CALIFORNIA

9

10  CARMEN JOHN PALMIERI, AND, BY AND )    CASE NO.:
    FOR THE C. PALMIERI ENTERPRISES,    )
11  INC. INVESTORS AND EMPLOYEES,       )    PROOF OF SERVICE
                                        )
12                  Plaintiffs,         )
                                        )
13                                      )
          vs.                           )
14                                      )
    THE SUPERIOR COURT OF SAN DIEGO     )
15  COUNTY; DEPARTMENT OF               )
    CORPORATIONS, COMMISSIONER JAN      )
16  LYNN OWEN; JAMES K. OPENSHAW,       )
    FORMER CORPORATIONS COUNSEL, IN     )
17  HIS INDIVIDUAL AND OFFICIAL         )
    CAPACITY; DEPARTMENT OF             )
18  INSURANCE, COMMISSIONER DAVE        )
    JONES; MINERVA LOPEZ, INSURANCE     )
19  INVESTIGATOR, IN HER INDIVIDUAL     )
    AND OFFICIAL CAPACITY; RECEIVER     )
20  CHARLES LABELLA, IN HIS INDIVIDUAL  )
    AND OFFICIAL CAPACITY; LA BELLA     )
21  AND MCNAMARA, LLP; AND DOES 1-100,  )
                                        )
22                  Defendants.         )
    _____)
23

24

25

26      I, _____ , HEREBY DECLARE:

27      1. I am a citizen of the United States, and am incarcerated at California Men's Colony West

28  in San Luis Obispo County.  My address is _____

                                    - 1 -
                               Proof of Service

_____. I am over the age of 18 years and not a party to the above-entitled action. I am familiar with the mail collection practices of _____ whereby each day's mail is collected, sealed, given the appropriate amount of postage and deposited in a United States mailbox after the close of each day's business.

On _____ , 2013, I served the following:

1. Superior Court for the County of San Diego

2. Department of Corporations

3. James K. Openshaw

4. Department of Insurance

5. Minerva Lopez

6. Charles La Bella

7. La Bella and McNamara, LLC.

By the following method:

____ MAIL by causing a true copy thereof to be placed in a sealed envelope with sufficient postage thereon fully prepaid to be placed in the United States Mail at _____ , California addressed as indicated above.

____ PERSONAL SERVICE by causing a true copy to be delivered by hand to the office(s) of the parties, or the individuals set forth above.

____ OVERNIGHT DELIVERY by causing such document to be delivered by overnight delivery to the office(s) of the parties set forth above.

____ FACSIMILE by causing such document to be transmitted by facsimile machine to the office(s) of the parties set forth above.

SEE ATTACHED SERVICE LIST

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct and that this declaration was executed in _____ , California on the date indicated below.

Dated: _____ , 2013

_____

- 2 -

Proof of Service

SERVICE LIST

Superior Court of San Diego County
Clerk of the Court
330 West Broadway
San Diego CA 92101

Department of Corporations  -  Commissioner Jan Lynn Owen
1515 K Street, STE 200
Sacramento CA 95814

James K. Openshaw
Department of Water Resources – CERS Division
2033 Howe Avenue, STE 220
Sacramento CA 95825

Department of Insurance   -  Commissioner Dave Jones
300 Capitol Mall, Suite 1700
Sacramento, Ca. 95814

Minerva Lopez
Department of Insurance
Investigation Division
1350 Front Street, STE 4061
San Diego, CA 92101

Charles La Bella
La Bella and McNamara, LLP
401 West A Street, STE 1150
San Diego CA 92101

La Bella and McNamara LLP
401 West A Street, STE 1150
San Diego CA 92101

- 3 -

Proof of Service

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CARMEN JOHN PALMIERI, et al.

(b) County of Residence of First Listed Plaintiff  SAN LUIS OBISPO
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)

IN PROPRIA PERSONA

## DEFENDANTS

Superior Court of San Diego County, et al.

County of Residence of First Listed Defendant  SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

UNKNOWN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☒ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | Alien Detainee | | ☒ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☒ 440 Other Civil Rights | Actions | | |

Also under PERSONAL INJURY:
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability
**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. §1983; ESCROW LAW §17416; INSURANCE CODE §§ 10113.2 10113.3 et seq. C.C.P. 564,

Brief description of cause: 566, 567; CR.C.C. 238, SANDIEGO R. C.R. 2.5.4. OF PROPERTY,
VIOLATION OF DUE PROCESS OF LAW, DEPRIVATION AND WILLFUL TAKING WRONGFUL REC'SHIP.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ $223,144,400.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE  February 22, 2013

SIGNATURE OF ATTORNEY OF RECORD  [signature]  In Propria Persona

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**FILED**

**MAR 0 5 2013**

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**13CV0 5 5 0 JLS DHB**

## I. (a) PLAINTIFFS
Carmen John Palmeri

**DEFENDANTS**
Superior Court of San Diego, et al.

| | |
|---|---|
| 2254 | 1983 |
| FILING FEE PAID | |
| Yes | No |
| IFP MOTION FILED | |
| Yes | |
| COPIES SENT TO | |
| Court | ProSe |

**(b)** County of Residence of First Listed Plaintiff   San Luis Obispo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmen John Palmeri
PO Box 8103
San Luis Obispo CA 93403

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☒ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42:1983
Brief description of cause:
Prisoner Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
03/05/2013

SIGNATURE OF ATTORNEY OF RECORD
s/ SKHoestenbach

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Alan Bloom
1750 S. El Camino Real
K-210
Encinitas, CA 92024

Label 107, January 2008

CERTIFIED MAIL

7009 2820 0002 4360 1639

US District Court,
San Diego
333 W. Broadway,
Room 4290
San Diego, CA 92101






U.S. POSTAGE
ENCINITAS, CA
92024
MAR 01 13
$8.90
0008475-08